868 A.2d 1067 (2005)
375 N.J. Super. 534
MAG ENTERTAINMENT, LLC, Plaintiff/Respondent,
v.
DIVISION OF ALCOHOLIC BEVERAGE CONTROL, Defendant/Appellant.
Superior Court of New Jersey, Appellate Division.
Argued February 1, 2005.
Decided March 7, 2005.
*1069 Eileen Schlindwein Den Bleyker, Deputy Attorney General, argued the cause for appellant (Peter C. Harvey, Attorney General of New Jersey, attorney; Patrick De Almeida, Assistant Attorney General, of counsel; Ms. Schlindwein Den Bleyker, on the brief).
Paul Colwell, West Orange, argued the cause for respondent (Wolff & Samson, attorneys; Mr. Colwell, of counsel; Maria Anastasia and Mr. Colwell, on the brief).
Before Judges SKILLMAN, PARRILLO and RIVA.
The opinion of the court was delivered by
PARRILLO, J.A.D.
In this interlocutory appeal, we consider whether a request under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, for information for use in collateral administrative proceedings with the governmental entity required to respond to the OPRA request was proper. Specifically, we granted leave to review an order of the Law Division: (1) granting plaintiff, MAG Entertainment, LLC (MAG), the right, under OPRA, to obtain documents from defendant, the Division of Alcoholic Beverage Control (Division or ABC), which were previously denied during discovery in the agency's pending enforcement *1070 action against MAG; and (2) compelling the deposition of an agency representative in furtherance of document production. We now reverse.
In October 2001, the Division filed administrative charges seeking to revoke MAG's plenary retail liquor license for allegedly serving alcohol to an intoxicated patron, who was then involved in a fatal car accident, and for alleged acts of "lewdness" by female dancers. In January, 2003, in the enforcement proceeding pending in the Office of Administrative Law (OAL), MAG requested documents and records regarding the Division's handling of other enforcement actions against similarly situated liquor licensees in order to potentially pursue a selective enforcement defense. When the Division refused to disclose this information, MAG filed a motion to compel discovery, which was granted by the administrative law judge (ALJ) in June, 2003. The Division appealed that decision and, in July, 2003, the ABC Director reversed on the ground that the discovery demand was burdensome and would require the agency to "undertake an extensive search of its records."
Rather than seeking interlocutory review here, Rule 2:2-4, MAG filed a request under OPRA for "all documents or records evidencing that the ABC sought, obtained or ordered revocation of a liquor license for the charge of selling alcoholic beverages to an intoxicated person in which such person, after leaving the licensed premises, was involved in a fatal auto accident," and "all documents or records evidencing that the ABC sought, obtained or ordered suspension of a liquor license exceeding 45 days for charges of lewd or immoral activity." MAG's request did not identify any specific case by name, date, docket number or any other citation, but instead demanded that:
[T]he documents or records should set forth the persons and/or parties involved, the name and citation of each such case, including unreported cases, the dates of filing, hearing and decision, the tribunals or courts involved, the substance of the allegations made, the docket numbers, the outcome of each matter, the names and addresses of all persons involved, including all witnesses and counsel, and copies of all pleadings, interrogatory answers, case documents, expert reports, transcripts, findings, opinions, orders, case resolutions, published or unpublished case decisions, statutes, rules and regulations.
On October 3, 2003, the Division's records custodian rejected MAG's request, deeming it a "[general] request for information" obtained through research, rather than a "request for a specific record." She further explained that the request was not limited to a particular time frame, thus necessitating a search of both open and closed Division files. More significantly, since the agency's case tracking system did not have a search engine that could readily extract a list of cases that fit MAG's request, the custodian would have to manually review the contents of every Division case file to determine the factual basis for the charges brought, and their disposition. In other words, MAG's request required the custodian to collect, evaluate, and compile information from each file and amounted, in effect, to an improper demand for research.
Consequently, on October 27, 2003, while the enforcement action was still pending in the OAL, MAG appealed the denial of its request to the Law Division by way of order to show cause and verified complaint pursuant to N.J.S.A. 47:1A-6. Prior to the return date, and in connection with its OPRA request, on December 10, 2003, MAG served the Division with a notice to *1071 take the oral depositions of both an Assistant Attorney General in charge of the ABC's Enforcement Bureau and a Deputy Attorney General previously assigned to the agency. The deposition notice also demanded the production of all documents related to the matter. Immediately thereafter, the Division filed its answer to the show cause order, denying the allegations and asserting various defenses, most notably lack of jurisdiction and failure to exhaust administrative remedies. On January 2, 2004, the Division also filed a notice of motion for a protective order quashing the depositions, pursuant to Rule 4:10-3.
At the hearing on the return date, January 9, 2004, the Division maintained that MAG's request was untenable due to its scope and the type and amount of work it required, and that, in any event, depositions were not the appropriate means of narrowing the request. MAG argued, to the contrary, that depositions would be an effective way to identify the relevant case files and the pertinent information therein that it was seeking under OPRA. The motion judge did not rule on the matter, but rather ordered the parties to "honestly talk to each other... and [s]ee if you [can] define the object of your inquiry, if there's some reasonable ways to do that."
As a result of this directive, the parties undertook settlement discussions. Over the course of the negotiations, the Division identified three cases that involved the sale of alcohol to an intoxicated patron who then caused a fatal motor vehicle accident and approximately 296 cases involving lewdness charges.[1] Nevertheless, despite this effort and the passage of seven months, no settlement was reached because the parties disagreed over which contents were privileged or otherwise exempted from OPRA's reach.
Consequently, another hearing was held on July 30, 2004, at which time the Division objected to blanket production, claiming application of a number of exemptions within OPRA, and citing the fact that the case files contained documents, such as criminal investigatory records, settlement negotiations, legal research, counsel's draft documents, and records of correspondence, that were not subject to disclosure. The Division also maintained that selective disclosure of the charges and depositions of all 300 cases would obviate the purported need for depositions of agency officials since MAG could not properly question either attorney about any other information in the files. MAG argued in response that it was not interested in the mental impression of the deponents, but only in the precise contents of the case files, and that depositions were necessary to identify with more specificity the documents, such as hearing transcripts, OAL decisions, reports and recommendations, and pleadings, that were disclosable.
Without an in-camera inspection of documents, and without findings on the Division's claims of privilege and exemptions, the court, by order of August 26, 2004, denied the agency's request for a protective order and allowed the deposition of the Assistant Attorney General in order "to move this thing along." However, the court limited the deposition "to an understanding of what these files are comprised *1072 of, with particularity, limited to how they're maintained, what type of disposition is made of materials once the case is over." As for which documents must be made available, the motion judge stated, "... it seems to me that the charges and dispositions certainly should be made available. Whether there is more that's made available will be subject to the deposition and the sharpening of the focus that has to come about in this case." In other words, the judge allowed MAG to depose an agency official for the purpose of more clearly refining its OPRA request and obtaining documents for use in a collateral OAL proceeding in which the Division was the adverse party, seeking revocation of MAG's liquor license. We granted a stay of the trial court's order pending disposition of the Division's interlocutory appeal. The administrative enforcement action remains pending in the OAL.
We review de novo the issue of whether access to public records under OPRA and the manner of its effectuation are warranted. We are satisfied that on the basis of this admittedly sparse record, the Law Division's broad disclosure order compelling the deposition of the agency official was clearly erroneous.
As a threshold matter, we first consider the interplay between OPRA and our discovery rules. No one disputes that MAG's OPRA request relates to issues in the ABC's collateral enforcement action pending in the OAL, and to documents for use in connection with that administrative proceeding. Although the purpose or motive for which information is sought is generally immaterial to the disclosure determination under OPRA, here the manner in which MAG attempted to use OPRA as a vehicle to transfer management of the discovery process in the administrative proceeding from the ALJ to the Law Division was patently improper.
New Jersey provides access to public records in three distinct ways, through the citizen's common law right of access, OPRA, and the discovery procedures applicable to civil disputes. Bergen County Improvement Auth. v. North Jersey Media Group, Inc., 370 N.J.Super. 504, 515, 851 A.2d 731 (App.Div.), certif. denied, 182 N.J. 143, 861 A.2d 847 (2004). Records that are not available under one approach may be available through another. For example, in Bergen County Improvement Authority, supra, we recognized that the common law definition of "public records" was broader than OPRA's definition of "government records," and therefore, a litigant might be able to obtain documents through the common law that it could not obtain through OPRA. 370 N.J.Super. at 510, 851 A.2d 731. Likewise, in Mid-Atlantic Recycling Technologies, Inc. v. City of Vineland, 222 F.R.D. 81, 85 (D.N.J.2004), the court held that federal discovery rules governing plaintiff's civil lawsuit against municipal defendants did not preclude plaintiff from requesting documents under OPRA even though plaintiff might obtain documents from defendants more quickly through OPRA and the documents might be otherwise unobtainable under the federal rules.
Unlike the limits and restrictions that a court may impose on the scope of discovery under our court rules, see e.g., Rule 4:10-3; Isetts v. Borough of Roseland, 364 N.J.Super. 247, 262-63, 835 A.2d 330 (App.Div.2003), OPRA embodies the public policy of New Jersey that:
government records shall be readily accessible for inspection, copying, or examination by the citizens of this State, with certain exceptions, for the protection of the public interest, and any limitations on the right of access accorded by [OPRA] shall be construed in favor of the public's right of access....

*1073 [N.J.S.A. 47:1A-1.]
Under OPRA, as under its predecessor statute, the Right to Know Law, N.J.S.A. 47:1A-2 to -4, repealed by L. 2001, c. 404,[2] the Legislature continued "the State's longstanding public policy favoring ready access to most public records." Serrano v. South Brunswick Tp., 358 N.J.Super. 352, 363, 817 A.2d 1004 (App.Div.2003). As we noted in Serrano, in examining case law under the prior Right to Know Law, "New Jersey has a history of commitment to public participation in government and to the corresponding need for an informed citizenry." Ibid. (quoting South Jersey Pub. Co. v. New Jersey Expwy. Auth., 124 N.J. 478, 486-87, 591 A.2d 921 (1991)). Thus, N.J.S.A. 47:1A-1 specifically provides that "all government records shall be subject to public access unless exempt." Furthermore, the custodian of the government record has the burden of proving that the denial of access is authorized by law. N.J.S.A. 47:1A-6.
The fact that litigation was pending between the ABC and MAG when MAG made its public records request does not, in itself, relieve the government agency of its obligation to comply with OPRA. See Mid-Atlantic Recycling Tech., supra, 222 F.R.D. at 85. Documents that are "governmental records" and subject to public access under OPRA are no less subject to public access because the requesting party is opposing the public entity in possession of material sought in collateral litigation. Ibid.; see also County of Los Angeles v. Superior Court, 82 Cal.App.4th 819, 98 Cal.Rptr.2d 564 (2000) (holding that a plaintiff who had filed suit against a state agency could file a request under California's open records act to obtain documents for use in its civil action even though a request for these same records had been denied in the collateral proceeding). There is no blanket exception carved out to the requirement of disclosure when the public records sought are germane to pending litigation between the requestor and the public entity. Cf. Bolm v. Custodian of Records of Tucson Police Dep't, 193 Ariz. 35, 969 P.2d 200 (Ct.App.1998) (fact of pending litigation when public records request was made does not affect public agency's obligation to comply with Arizona's public records law). As we previously held in Hartz Mountain, supra, it is appropriate for the Law Division to entertain the OPRA application "even if the denied OPRA request is made in connection with a proceeding pending before a state administrative agency whose final decisions are reviewable in the Appellate Division." 369 N.J.Super. at 182-83, 848 A.2d 793. Simply put, the right to inspect and copy governmental records under OPRA is without limitation as to the reasons for which the access is undertaken. A party's right to access public records is not abridged because it may be involved in other litigation with the governmental agency required to respond to the OPRA request.
By parity of reasoning, that the information requested is necessary to properly resolve related civil proceedings pending between the parties is of no moment. OPRA is a public disclosure statute and is not intended to replace or supplement the discovery of private litigants. Its purpose is to inform the public about agency action, not necessarily to benefit *1074 private litigants. That is, a party's status as a litigant does not enlarge its access to public records under OPRA. The private needs of the requesting party for information in connection with collateral proceedings play no part in whether the request is proper or whether the disclosure is warranted.
To this end, OPRA's definition of "government record" demarks the outer limits of the statute's reach. Importantly, OPRA limits its definition of "government record" to:
any paper, written or printed book, document, drawing, map, plan, photograph, microfilm, data processed or image processed document, information stored or maintained electronically or by sound-recording or in a similar device, or any copy thereof, that has been made, maintained or kept on file in the course of ... official business ... or that has been received in the course of ... official business ...
[N.J.S.A. 47:1A-1.1.]
Moreover, it affirmatively excludes from such definition twenty-one separate categories of information, N.J.S.A. 47:1A-1.1, thereby "significantly reduc [ing] the universe of publicly-accessible information." Bergen County Improvement Auth., supra, 370 N.J.Super. at 516-17, 851 A.2d 731.
While OPRA provides an alternative means of access to government documents not otherwise exempted from its reach, it is not intended as a research tool litigants may use to force government officials to identify and siphon useful information. Rather, OPRA simply operates to make identifiable government records "readily accessible for inspection, copying, or examination." N.J.S.A. 47:1A-1. Even then, inspection is subject to reasonable controls, and courts have inherent power to prevent abuse and protect the public officials involved. See DeLia v. Kiernan, 119 N.J.Super. 581, 585, 293 A.2d 197 (App.Div.), certif. denied, 62 N.J. 74, 299 A.2d 72 (1972). In fact, if a request would substantially disrupt agency operations, the custodian may deny it and attempt to reach a reasonable solution that accommodates the interests of the requestor and the agency. N.J.S.A. 47:1A-5(g).
On this score, the Government Records Council (Council), the administrative body charged with adjudicating OPRA disputes, N.J.S.A. 47:1A-6, has explained that "OPRA does not require record custodians to conduct research among its records for a requestor and correlate data from various government records in the custodian's possession." Reda v. Tp. of West Milford, GRC Complaint No. 2002-58 (January 17, 2003). There, an individual sought information regarding a municipality's liability settlements but did not request any specific record. Ibid. In rejecting the request, the Council noted that OPRA only allows requests for records, not requests for information, and therefore, it is "incumbent on the requestor to perform any correlations and analysis he may desire." Ibid.
Other jurisdictions, in interpreting their own freedom of information laws have reached similar results. For example, in Capitol Information Ass'n v. Ann Arbor Police, 138 Mich.App. 655, 360 N.W.2d 262, 263 (1985), the court upheld the denial of a plaintiff's request for public records that included "all correspondence with all federal law enforcement/investigative agencies ... that pertain to persons living in Ann Arbor, Michigan...." Even though the request was confined to a relatively short period of time, the court characterized it as "absurdly overbroad" and explained that "[p]laintiff had to request specific identifiable records; it failed to do so here." Id. at 264.
*1075 Likewise, in Hangartner v. City of Seattle, 151 Wash.2d 439, 90 P.3d 26, 28 (2004), the Washington Supreme Court held improper a request for "all books, records, [and] documents of every kind" related to a specific public transportation project. Finding the request overbroad, the court reasoned that the state's public disclosure act "was not enacted to facilitate unbridled searches of an agency's property." Id. at 30. Accordingly, a proper request under the act must "identify with reasonable clarity those documents that are desired, and a party cannot satisfy this requirement by simply requesting all of an agency's documents." Ibid. See also State ex rel. Dillery v. Icsman, 92 Ohio St.3d 312, 750 N.E.2d 156 (2001) (denying attorney's fees related to plaintiff's public records request because the request was improper due to the fact that it failed to identify the desired records with sufficient clarity).
In Bader v. Bove, 273 A.D.2d 466, 710 N.Y.S.2d 379, leave to appeal denied, 95 N.Y.2d 764, 716 N.Y.S.2d 38, 739 N.E.2d 294 (2000), property owners sought access, under New York's freedom of information law, to all records related to the adoption or revision of a village zoning code's prohibition of commercial activity. The Appellate Division affirmed the lower court's denial of the petition as overbroad and burdensome, inasmuch as it would require the village clerk to manually search through every document filed with the village for the past 45 years. Similarly in In Re Gannett Co. v. James, 86 A.D.2d 744, 447 N.Y.S.2d 781, leave to appeal denied, 56 N.Y.2d 502, 450 N.Y.S.2d 1023, 435 N.E.2d 1099 (1982), the court denied the petitioner's request for all complaints made to the internal affairs division of the Rochester Police Department alleging harassment or use of force by police officers for the past two years since the Civil Service Commission, which does not maintain separate files for police disciplinary proceedings, would have had to go through every employee's file and compile the information.
Federal courts, considering the permissible scope of requests for government records under the Freedom of Information Act, 5 U.S.C.A § 552, have repeatedly held that the requested record must "be reasonably identified as a record not as a general request for data, information and statistics...." Krohn v. Dep't of Justice, 628 F.2d 195, 198 (D.C.Cir.1980); see also Borom v. Crawford, 651 F.2d 500, 501-02 (7th Cir.1981); Hudgins v. Internal Revenue Serv., 620 F.Supp. 19, 21 (D.D.C.1985), aff'd 808 F.2d 137 (D.C.Cir.1987), appeal dismissed, cert. denied, 484 U.S. 803, 108 S.Ct. 47, 98 L.Ed.2d 12 (1987). For example, in Krohn, supra, a request for "sentencing statistics" was "fatally flawed" because it was "so broad and general as to require the agency to review the entire record of `each and every... criminal case' in order to determine whether it contain[ed] any evidence of the data, information or statistics that appellant request[ed]." 628 F.2d at 197-98. Extending this reasoning even further, the court in Borom, supra, rejected a requestor's argument that the government could not avoid disclosure of information it possessed merely because its record-keeping systems did not compile and store the information in the precise form in which it was requested. 651 F.2d at 501. There, the requestor sought information regarding the parole or early release of black and white federal prisoners, but the Parole Commission's data systems did not collate information based on race. Ibid. Affirming a grant of summary judgment in favor of the government, the court reiterated the rationale espoused in Krohn. Id. at 502. But see Ferri v. Bell, 645 F.2d 1213 (3rd Cir.1981) (holding that request under *1076 FOIA could not be rejected in toto simply because compliance would require more work than merely referring to a general index).
We do not interpret OPRA any differently. Under OPRA, agencies are required to disclose only "identifiable" governmental records not otherwise exempt. Wholesale requests for general information to be analyzed, collated and compiled by the responding government entity are not encompassed therein. In short, OPRA does not countenance open-ended searches of an agency's files.
Here, the Law Division judge failed to apply these governing principles and, therefore, erred in granting MAG's OPRA request. Most significantly, the request failed to identify with any specificity or particularity the governmental records sought. MAG provided neither names nor any identifiers other than a broad generic description of a brand or type of case prosecuted by the agency in the past. Such an open-ended demand required the Division's records custodian to manually search through all of the agency's files, analyze, compile and collate the information contained therein, and identify for MAG the cases relative to its selective enforcement defense in the OAL litigation. Further, once the cases were identified, the records custodian would then be required to evaluate, sort out, and determine the documents to be produced and those otherwise exempted. Simply put, the Division was asked to do the very research and investigation MAG needed to do in the administrative proceeding in order to establish a "colorable claim" of selective enforcement before being entitled to pre-trial discovery as to its defense in that forum. State v. Ballard, 331 N.J.Super. 529, 752 A.2d 735 (App.Div.2000); State v. Smith, 306 N.J.Super. 370, 703 A.2d 954 (App.Div.1997); State v. Kennedy, 247 N.J.Super. 21, 588 A.2d 834 (App.Div.1991). Having failed to make any threshold showing in the OAL, MAG employed OPRA as an alternative to civil discovery, to obtain information previously denied in the enforcement action. While OPRA may provide access to governmental records otherwise unavailable, MAG's request was not a proper one for specific documents within OPRA's reach, but rather a broad-based demand for research and analysis, decidedly outside the statutory ambit.
But even if MAG's OPRA request may be viewed as one properly for governmental records, the manner in which the Law Division judge tried to effectuate access was patently erroneous. Obviously recognizing the sheer breadth and scope of MAG's request, the court compelled the deposition of a Division representative in order to better manage, refine, and narrow the search. Of course, the perceived need for such extraneous aid only serves to highlight the impropriety of MAG's request in the first instance. By ordering the deposition of an agency official, the court compounded the error, not only implicating a host of other concerns, see, e.g., Federal Trade Commission v. Grolier, Inc., 462 U.S. 19, 30, 103 S.Ct. 2209, 2216, 76 L.Ed.2d 387 (1983) (Brennan, J., concurring); Kerr v. Able Sanitary and Environmental Services, Inc., 295 N.J.Super. 147, 158-59, 684 A.2d 961 (App.Div.1996), but also far exceeding the limited relief and summary procedures afforded under the statute.
Without question, proceedings under OPRA are to be conducted in a "summary or expedited manner." N.J.S.A. 47:1A-6; Hartz Mountain, supra, 369 N.J.Super. at 185, 848 A.2d 793; Courier News v. Hunterdon County Prosecutor's Office, 358 N.J.Super. 373, 378, 817 A.2d 1017 (App.Div.2003). This means that a *1077 trial court is to proceed under the procedures prescribed in Rule 4:67. R. 4:67-1(a). The action is commenced by an order to show cause supported by a verified complaint, and at an initial hearing, if the court is "satisfied with the sufficiency of the application, [it] shall order the defendant to show cause why final judgment should not be rendered for the relief sought." Ibid; R. 4:67-2(a). The court must try the case at the return date of the order to show cause "or on such short day as it fixes." R. 4:67-5; Courier News, supra, 358 N.J.Super. at 378, 817 A.2d 1017.
In a proceeding conducted under Rule 4:67-5, a court must make findings of fact, either by adopting the uncontested facts in the pleadings after concluding that there are no genuine issues of fact in dispute, or by conducting an evidentiary hearing. Id. at 378-79, 817 A.2d 1017. For instance, in an OPRA action, as here, the court is obliged when a claim of confidentiality or privilege is made by the public custodian of the record, to inspect the challenged document in-camera to determine the viability of the claim. Hartz Mountain, supra, 369 N.J.Super. at 183, 848 A.2d 793; see also Loigman v. Kimmelman, 102 N.J. 98, 505 A.2d 958 (1986). "That inspection implies the necessity of recorded factfinding by the trial judge as well as the opportunity of the parties to address general principles relative to the claim of confidentiality and privilege, as well, perhaps, an opportunity to the government custodian to argue specifically, as part of the in-camera review, why the document should be deemed privileged or confidential or otherwise exempt from the access obligation." Hartz Mountain, supra, 369 N.J.Super. at 183, 848 A.2d 793.
Of course, these procedures must be conducted in an expedited manner. Summary actions are, by definition, short, concise, and immediate, and further, are "designed to accomplish the salutary purpose of swiftly and effectively disposing of matters which lend themselves to summary treatment." Depos v. Depos, 307 N.J.Super. 396, 399, 704 A.2d 1049 (Ch.Div.1997) (quoting Perretti v. Ran-Dav's County Kosher, 289 N.J.Super. 618, 623, 674 A.2d 647 (App.Div.1996)). Unlike Rule 4:67-2(b), which allows for conversion of a plenary action into a summary action, and, therefore, may require an elaborated record, Rule 4:67-2(a), which governs OPRA actions, does not permit the record to be supplemented by depositions or other forms of discovery. In other words, Rule 4:67 distinguishes between those actions permitted to proceed in a summary manner by rule or statute, as is the case here, and actions that may be converted from plenary actions into summary actions. See Taylor v. Ford Motor Co., 703 F.2d 738, 742-43 (3rd Cir.1983). While the latter specifically contemplate depositions, such protracted discovery is simply not suitable, and, absent legitimate need, is not permissible in actions, like OPRA proceedings, that are inherently summary by nature and expedited in manner.[3]
Yet, the unorthodox procedure invoked in this case was neither summary nor expeditious. Quite the contrary, the hearing at which the agency official's deposition was ordered occurred seven months after MAG's OPRA application was filed. By then, although the Division had posed a *1078 number of objections to the request, the court had not undertaken an in-camera inspection of any documents or passed on any of the agency's claims of privilege, confidentiality, or exemption. Instead, after the passage of so much time, the court took the preliminary step of ordering the official's deposition. Even though presumably only to index the contents of the 300 case files previously identified by the Division, this extraordinary measure was not only beyond the limited scope of the summary hearing and, therefore, impermissible, but it was also totally unnecessary. The Division's own regulations specify precisely what documents are required to be maintained in its files in the course of official business, N.J.A.C. 13:2-29.1. Thus, no legitimate purpose is served by having an agency official reiterate that which agency rules clearly prescribe. Moreover, even assuming so innocuous a purpose, this "access" device nevertheless runs the risk of infringing on protected areas, generating further judicial involvement, and prolonging this already burdensome and protracted litigation. What is starkly obvious is that OPRA has been employed here to circumvent the discovery process in the collateral administrative proceeding.
We are of the view that there must be closure to this matter, especially since the Division's enforcement action against MAG, filed over two years ago, has been stayed pending resolution of this interlocutory appeal. Because we find that the Division was not required to comply with MAG's invalid OPRA request, we vacate the order of August 25, 2004, compelling the agency official's deposition, and direct the Law Division on remand, to dismiss the matter.
Reversed and remanded.
NOTES
[1] A dispute subsequently arose over the exact meaning of this representation. The Division claims it was able to identify these cases by treating the negotiations as a modified OPRA request, in which MAG limited the scope of records it sought by only asking for cases from 1990 to the present. On the other hand, MAG asserts that it agreed to no such qualification and considers the Division's representation responsive to its original OPRA request. As such, MAG claims the identified cases constitute all the relevant information being sought.
[2] In replacing the Right to Know Law with OPRA by L. 2001, c. 404, the Legislature retained much of the original statement of legislative purpose and findings, N.J.S.A. 47:1A-1. See Hartz Mountain Indus., Inc. v. New Jersey Sports & Expo. Auth., 369 N.J.Super. 175, 183, n. 2, 848 A.2d 793 (App.Div.), certif. denied, 182 N.J. 147, 862 A.2d 56 (2004).
[3] To be sure, in certain instances, depositions may be proper in actions brought pursuant to Rule 4:67-1(a). Significantly, Rule 4:67-5 allows the court, for good cause shown, to order that an action proceed as in a plenary action. Here, however, MAG never made such a motion, nor did the judge find good cause to convert the action into a plenary proceeding.