NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4869-13T2
 A-1272-14T1

KATALIN GORDON,

 Complainant-Appellant,

v.

CITY OF ORANGE (ESSEX)
CUSTODIAN OF RECORD,

 Respondent-Respondent.

 Argued September 20, 2016 – Decided June 23, 2017

 Before Judges Rothstadt and Sumners.

 On appeal from the Government Records Council,
 Complaint Nos. 2013-255 and 2013-256.

 Katalin Gordon, appellant pro se.

 Debra A. Allen, Deputy Attorney General,
 argued the cause for respondent New Jersey
 Government Council (Christopher S. Porrino,
 Attorney General, attorney; Melissa H. Raksa,
 Assistant Attorney General, of counsel; Ms.
 Allen, on the brief).

 Jeanette Calderon-Arnold, Assistant City
 Attorney, argued the cause for respondent City
 of Orange Township (Dan S. Smith, City
 Attorney, attorney; Ms. Calderon-Arnold, on
 the brief).
PER CURIAM

 In these two appeals, calendared back-to-back and

consolidated for purposes of a single opinion, appellant Katalin

Gordon challenges final agency decisions by the New Jersey

Government Records Council (GRC) regarding her requests for

documents under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-

1 to -13, from defendant City of Orange (City). Gordon's requests

sought information related to her concerns over compensation paid

to City Clerk Dwight Mitchell during his prolonged employment

absence. In A-4869-13, the GRC denied Gordon's request for

litigation records involving Mitchell. In A-1272-14, the GRC

determined that the City's lack of responsiveness to Gordon's OPRA

request for records of disability insurance payments made to

Mitchell and Mitchell's accumulated sick leave was not willful and

deliberate. For the reasons that follow, we affirm the GRC's

decision in A-4869-13, but reverse and remand its decision in A-

1272-14.

 I.

 A-1272-14

 Gordon submitted an OPRA request to the City on June 25,

2013, seeking all records of disability insurance payments

received and sick days accumulated by City Clerk Dwight Mitchell

 2 A-4869-13T2
from July 1, 2010 to June 25, 2013. The City denied her request

on July 11, 2013, claiming that the records "involve issues

regarding ongoing litigation." In turn, Gordon requested that the

City provide the specific OPRA reference preventing it from

releasing the sought-after records. The City advised Gordon that

her initial request was closed, and since she did not ask for an

OPRA reference in her initial request, she would have to submit a

new OPRA request to the City's Law Department to provide the

reference for the initial denial. Gordon replied that she did not

have to submit a new OPRA request as it was the City's obligation

to give detailed reasons for denying her request, and if the City

choose not to do so, she would file a Denial of Access Complaint

with the GRC. The following day, the City reiterated its position

that her OPRA request was closed.

 Gordon subsequently filed a complaint with the GRC asserting

that the City was obligated to provide the legal justification for

denying her request, and that it be compelled to release the

sought-after records. She also demanded that, based upon the

City's responses to her current and previous OPRA requests, the

GRC should find that the current non-disclosure was intentional

and deliberate.

 3 A-4869-13T2
 On April 29, 2014, the GRC issued an interim order, adopting

the findings and recommendations of the Executive Director, that

the City "must disclose to [Gordon] for the period of January 1,

2010 to June 23, 2013, a record of City Clerk Dwight Mitchell's

accumulated sick days and disability insurance payments received

from the City . . . ." The GRC reasoned that due to the City's

failure "to provide [Gordon] with a specific lawful basis for

denying access to the requested records, [it thereby] failed to

bear the burden of proving that the denial of access to said

records is lawful." The GRC, however, deferred determining whether

the City "knowingly and willfully violated OPRA and unreasonably

denied access under the totality of circumstances" pending its

compliance with the interim order.

 On May 9, the City certified to the GRC that it complied

with the interim order. In reply, Gordon disputed the

responsiveness of the records she received, claiming that, based

upon the City's ordinance and the City's responses to her past

OPRA requests, Mitchell had neither been granted nor been receiving

temporary disability benefits as the City claimed.

 On September 30, the GRC issued a final determination,

adopting the findings and recommendations of the Executive

Director that the City complied with its interim order providing

 4 A-4869-13T2
Gordon all the documents she requested. The agency rejected

Gordon's claim of unresponsiveness by reasoning that it is not

within its jurisdiction to determine compliance with its order by

interpreting and applying the City's municipal code to information

received from past OPRA requests. Although the agency found that

the City failed to timely respond to the request, failed to cite

a specific legal basis for denying the request, and failed to

prove that the denial was authorized by law, the GRC determined

there was no evidence that the City's failings were due to "a

knowing and willful violation of OPRA and unreasonable denial of

access under the totality of the circumstances."

 A-4869-13

 As a follow-up to her request regarding Mitchell's disability

insurance payments and accumulated sick leave, Gordon submitted

an OPRA request to the City on July 24, 2013, seeking "all records

or parts thereof, from January 1, 2010 to [July 24, 2013,] which

show ongoing and pending litigation involving [] Mitchell." The

City responded that the document "request . . . would fall into

one, or more categories[,]" that could be a reason to deny her

request.1 The City further "suggested that it may be helpful to

1
 The City listed the five categories as a basis for denial:

 5 A-4869-13T2
meet with [Gordon] . . . [to] discuss specific documents"

pertaining to her request.

 Rather than meeting with City officials, Gordon filed a Denial

of Access Complaint with the GRC on September 10, 2013, asserting

that that the City neither identified the records she sought nor

explained how her request related to records that were inimical

to the public interest. Gordon asked the "GRC to make a

determination that [the City] withheld the fact there was ongoing

and pending litigation involving [] Mitchell."

 On April 29, 2014, the GRC rendered its final decision,

adopting the entirety of the findings and recommendations of the

Executive Director, denying Gordon's complaint. The agency ruled

that the City's denial of the OPRA request by providing a list of

possible exemptions that may be applicable was not a "specific

 "Inter-agency or intra-agency advisory, or
 consultative or deliberative material[;
 r]ecords that are subject to attorney-client
 privilege[; i]nformation which is
 communication between a public agency and its
 insurance carrier[; i]nformation generated by
 or on behalf of public employers or public
 employees in connection with any grievance
 filed by or against an individual[; o]ngoing
 investigations – any records pertaining to an
 investigation in progress by any public agency
 if disclosure of such record or records shall
 be detrimental to the public interest.

 [N.J.S.A. 47:1A-5(g).]

 6 A-4869-13T2
legal basis for denying the requested records[,]" but the "request

is invalid because it fails to seek identifiable government

records[,]" and therefore was not an unlawful denial of access to

public records. Citing MAG Entertainment, LLC v. Division of

Alcoholic Beverage Control, 375 N.J. Super. 534, 546 (App. Div.

2005), the GRC noted that Gordon's request seeking "all records

or parts thereof which show ongoing and pending litigation

involving Mitchell[,]" was overly broad because the City "would

have to conduct research to examine every record on file which

might reflect the requested" information.

 II.

 Our review of a GRC decision "is governed by the same

standards as review of a decision by any other state agency,"

Fisher v. Division of Law, 400 N.J. Super. 61, 70 (App. Div. 2008)

(citing Serrano v. S. Brunswick Twp., 358 N.J. Super. 352, 362

(App. Div. 2003)), and is therefore limited. In re Stallworth,

208 N.J. 182, 194 (2011). We "will not overturn an agency's

decision unless it violates express or implied legislative

policies, is based on factual findings that are not supported by

substantial credible evidence, or is arbitrary, capricious or

unreasonable." Fisher, supra, 400 N.J. Super. at 70. Although

an agency's determination as to the applicability of OPRA is a

 7 A-4869-13T2
legal conclusion subject to plenary review, see O'Shea v. Township

of West Milford, 410 N.J. Super. 371, 379 (App Div. 2009), "under

our deferential standard of review, we give weight to the GRC's

interpretation of OPRA." McGee v. Twp. of E. Amwell, 416 N.J.

Super. 602, 616 (App. Div. 2010). "We do not, however, simply

rubber stamp the agency's decision." Bart v. City of Paterson

Hous. Auth., 403 N.J. Super. 609, 618 (App. Div. 2008) (citation

and internal quotation marks omitted).

 OPRA expresses New Jersey's public policy favoring

transparency in government and disclosure of government documents.

See N.J.S.A. 47:1A-1. OPRA endeavors to "maximize public knowledge

about public affairs in order to ensure an informed citizenry and

to minimize the evils inherent in a secluded process." Times of

Trenton Publ'g Corp. v. Lafayette Yard Cmty. Dev. Corp., 183 N.J.

519, 535 (2005) (citation omitted). To that end, the statute

mandates that "government records shall be readily accessible for

inspection, copying, or examination by citizens of this State,

with certain exceptions, for the protection of the public interest,

and any limitations on the right of access . . . shall be construed

in favor of the public's right of access." N.J.S.A. 47:1A-1.

 OPRA broadly defines "government record" to include

 any paper . . . information stored or
 maintained electronically . . . or any copy

 8 A-4869-13T2
 thereof, that has been made, maintained or
 kept on file in the course of . . . official
 business by any . . . commission, agency or
 authority of the State or any political
 subdivision thereof . . . .

 [N.J.S.A. 47:1A-1.1.]

 An OPRA applicant "must identify with reasonable clarity

those documents that are desired, and a party cannot satisfy this

requirement by simply requesting all of an agency's documents.

OPRA does not authorize unbridled searches of an agency's

property." Bent v. Twp. of Stafford Police Dep't, Custodian of

Records, 381 N.J. Super. 30, 37 (App. Div. 2005); see also Renna

v. Cnty. of Union, 407 N.J. Super. 230, 245 (App. Div. 2009) ("The

custodian must have before it sufficient information to make the

threshold determination as to the nature of the request and whether

it falls within the scope of OPRA."); Gannett N.J. Partners, LP

v. Cnty. of Middlesex, 379 N.J. Super. 205, 212 (App. Div. 2005)

("OPRA requires a party requesting access to a public record to

specifically describe the document sought."). OPRA was not created

to allow "open-ended searches of an agency's files" and "is not

intended as a research tool litigants may use to force government

officials to identify and siphon useful information." MAG Entm't,

supra, 375 N.J. Super. at 546-49. As such, requests for "'any and

all' documents" on a specific subject are considered "overly

 9 A-4869-13T2
broad." Spectraserv, Inc. v. Middlesex Cty. Util. Auth., 416 N.J.

Super. 565, 578 (App. Div. 2010). A custodian may reject a request

that is overly broad or vague so as to prevent identification of

the records sought. N.J. Builders Ass'n v. N.J. Council on

Affordable Hous., 390 N.J. Super. 166, 181-82 (App. Div.), certif.

denied, 190 N.J. 394 (2007).

 In A-4869-13, Gordon contends that the GRC erred by finding

that her OPRA request was overly broad because the litigation

records she sought were confined to a specific subject matter and

limited to a specific period. She contends her request is similar

to that in Burke v. Brandes, 429 N.J. Super. 169, 176-77 (App.

Div. 2012), where we held that an OPRA request seeking E-Z Pass

benefits provided to Port Authority retirees was an accessible

public record, because her narrow request covers specific dates

for documents regarding litigation concerning Mitchell that are

only accessible through OPRA. We are not persuaded.

 We view Gordon's request as deficient under OPRA. Gordon's

failure to specify the documents sought necessitated the

deployment of City resources to sift through the City's files and

identify, analyze and select potentially relevant and responsive

public records pertaining to litigation in which Mitchell was

involved. OPRA imposes no such obligation upon government

 10 A-4869-13T2
custodians. See MAG Entm't, supra, 375 N.J. Super. at 549-50.

Relatedly, Gordon's request was also overbroad because it

encompassed attorney-client records that were exempt from

disclosure under OPRA, and which required further efforts by the

City to cull, isolate, and evaluate. Spectraserv, Inc., supra,

416 N.J. Super. at 578. Based on the OPRA's clear and unambiguous

language, and consistent with our previous interpretations of the

statute, the GRC's final order denying Gordon's OPRA request was

proper.

 Turning to A-1272-14, Gordon contends the City's willful and

knowing denial of her OPRA request was demonstrated by the GRC's

issuance of an interim order due to the City's deficiencies in

responding to her OPRA request seeking records of disability

insurance payments to Mitchell, and the amount of his accumulated

sick days. In particular, Gordon asserts that the City: was not

involved in pending litigation with Mitchell as it misrepresented;

refused to provide legal grounds for the denial of her request

after she asked for them; failed to provide the GRC with a

statement of information; and delayed her request for nearly a

year. Gordon further argues that the City's willful denial of her

request is evinced by its release of unresponsive documents and

false clarifications that the City's code allows a city employee

 11 A-4869-13T2
to be paid full salary while on disability. This, she contends,

contradicts the City's response to a separate and earlier OPRA

request indicating that Mitchell was not approved for any

disability claim.

 It is clear that "[r]ecord custodians must grant or deny

access to . . . [such] records 'as soon as possible, but not later

than seven business days after receiving the request.'" Mason v.

City of Hoboken, 196 N.J. 51, 65-66 (2008) (quoting N.J.S.A. 47:1A-

5(i)). A custodian or any other public official or employee "who

knowingly or willfully violates [OPRA] . . . and is found to have

unreasonably denied access under the totality of the

circumstances, shall be subject to a civil penalty." N.J.S.A.

47:1A-11(a). If there is a knowing and willful OPRA violation by

a public body or custodian of records, "and is found to have

unreasonably denied access under the totality of the

circumstances, the [GRC] may impose the penalties provided for in

[OPRA]." N.J.S.A. 47:1A-7(e).

 OPRA also provides that when any record or records "shall

pertain to an investigation in progress by any public agency, the

right of access - may be denied if the inspection, copying or

examination of such record or records shall be inimical to the

public interest[.]" N.J.S.A. 47:1A-3(a). See also N. Jersey

 12 A-4869-13T2
Media Grp., Inc. v. Twp. of Lyndhurst, 441 N.J. Super. 70, 107

(App. Div.) (noting that motor vehicle accident reports fall

outside the exemption for criminal investigatory records because

such documents "are required by law to be made available to the

public[,]" under N.J.S.A. 39:4-131), leave to appeal granted, 223

N.J. 553 (2015).

 Although we generally defer to the GRC's findings, we conclude

there was insufficient evidence in the record to support its

finding that the City's denial of Gordon's OPRA request was not

willful and deliberate. In denying Gordon's request, the City

claimed that the records could not be released because of an

"ongoing and pending litigation. The records requested involve

issues regarding the ongoing litigation." However, there was no

litigation. The City now contends that there was an investigation

involving Mitchell, which it mistakenly mischaracterized as

litigation. We find this explanation unconvincing and belies the

credibility of its denial.

 Yet, even if there was an investigation, there was no

indication by the City how the sought-after information was

inimical to the public interest. N.J.S.A. 47:1A-3(a). Salary and

payroll records of a city employee are considered a government

record subject to public release. N.J.S.A. 47:1A-10.

 13 A-4869-13T2
 The City's willful and deliberate denial of Gordon's request

is further evinced by its meritless claim that her request was

broad, and that it does not electronically maintain the

information. The information request was clear and specific, and

we envision no time-consuming burden in obtaining the information

despite the fact that it is not preserved in the City's computers.

 We affirm the GRC's decision in A-4869-13, and reverse and

remand its decision in A-1272-14 for further proceedings regarding

the imposition of appropriate penalties in accordance with OPRA.

 Affirmed in part; reversed and remanded in part. We do not

retain jurisdiction.

 14 A-4869-13T2