NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3460-18T1

BAFFI SIMMONS and
AFRICAN AMERICAN DATA
AND RESEARCH INSTITUTE
(AADARI),

      Plaintiffs-Respondents,

v.

WENDY MERCADO, CITY OF
MILLVILLE, and CITY OF
MILLVILLE POLICE DEPARTMENT,

      Defendants-Appellants.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **June 11, 2020** |
| **APPELLATE DIVISION** |

        Submitted May 12, 2020 – Decided June 11, 2020

        Before Judges Fisher, Accurso and Rose.

        On appeal from the Superior Court of New Jersey,
        Law Division, Cumberland County, Docket No. L-
        0712-18.

        Brock D. Russell, attorney for appellants.

        Rotimi A. Owoh, attorney for respondents.

    The opinion of the court was delivered by

FISHER, P.J.A.D.

In this appeal, we consider an order that held defendants City of Millville, City of Millville Police Department, and Wendy Mercado, were required to provide plaintiffs Baffi Simmons and the African American Data and Research Institute records pursuant to plaintiffs' OPRA[1] request. Specifically, plaintiffs sought copies of the following that were issued by the Millville Police Department from January 2017 to the date of the request:

- "DWI/DUI complaints and summonses";

- "drug possession complaints and summonses";

- the department's "[a]rrest [l]istings"; and

- "drug paraphernalia complaints and summons."

Defendants produced redacted records that allegedly satisfied the request for the arrest listings, but as for the other three categories, defendants asserted "there are no records responsive to your request" and advised that "[c]ourt documents can be requested through the NJ Judiciary website."

The trial judge summarily ruled in plaintiffs' favor and, because plaintiffs prevailed, awarded attorney's fees. Defendants appeal, primarily arguing the judge erred in finding these documents to be government records within their possession because Millville police officers merely input

_____

[1] Open Public Records Act, N.J.S.A. 47:1A-1 to -13.

A-3460-18T1

information into electronic forms created by others and maintained by the judiciary. We agree with defendants and reverse.

The record reveals that after receiving a response from defendants that the records sought were maintained by the judiciary and not Millville or its police department, plaintiffs filed in October 2018 a verified complaint. They also applied for an order, which, when entered, required defendants to show cause why they did not violate OPRA by denying plaintiffs access to the requested DWI/DUI, drug possession, and drug paraphernalia complaints and summonses. In responding to the order to show cause, defendants submitted the affidavit of a Millville police lieutenant who asserted the department does not maintain DWI/DUI, drug possession, and drug paraphernalia complaints and summons records because they are in the possession of the Millville Municipal Court, which places those records under the aegis of the judiciary. That is, according to defendants, once those documents are electronically filed through the State's Electronic Complaint Disposition Record (eCDR) system, defendants no longer have access to those records and are no longer their custodian. Defendants also argued that even if they had access to eCDR, they would be unable to produce the requested records because the system does not

allow for the usage of a particular charge or complaint type as a search parameter.[2]

The judge found plaintiffs were entitled to the requested records from defendants. In rejecting defendants' argument that they no longer "maintained" the records, the judge observed that "whether or not [defendants] maintain [the records] . . . [is] not a standard under OPRA." The judge did, however, provide defendants with additional time to both ascertain and supplement the record with proof about whether they were able to access eCDR for the complaints and summonses requested.

Defendants thereafter filed a supplemental brief, conceding "the Millville Police Department has access to eCDR." Notwithstanding, defendants argued: (1) the complaints and summonses requested by plaintiffs are not records required by law to be maintained by Millville for any period of time; and (2) requiring defendants to search and provide the requested records from eCDR – of which defendants are not the custodian – exceeds OPRA's intended reach. Defendants argued they would have to review nearly 5,000 arrest card files from the time period in question, identify those that included a drug possession or drug paraphernalia charge, obtain the information necessary

---

[2] Despite this position, plaintiffs were provided with redacted records responsive to the request for DWI/DUI complaints and summonses.

to conduct a search of eCDR, and then locate the corresponding records in eCDR.

The trial judge found that because the Millville Police Department has access to the system that contains the records requested by plaintiffs, defendants violated OPRA by not turning the records over. The judge entered a conforming order on January 3, 2019, and invited plaintiffs to submit a certification of services in support of their request for counsel fees. Later, the judge denied defendants' reconsideration motion, which emphasized defendants' arguments that the requested documents are not government records but are court records maintained by the judiciary and that their ability to access the records does not mean they are the custodian of those records obligated to comply with an OPRA request. The judge rejected these arguments and denied reconsideration by order entered on February 18, 2019.

The following month, the judge considered the parties' submissions on plaintiffs' request for counsel fees, and, on March 22, 2019, ordered defendants to pay plaintiffs $5424 in fees. The judge also stayed the order pending appeal.

In appealing, defendants reprise their arguments that the complaints and summonses sought by plaintiffs exist in electronic form, are maintained by the judiciary, and in its custody, not their custody. We agree. To explain, we first

briefly review OPRA's requirements and how OPRA has been applied in similar settings.

The Legislature's purpose in enacting OPRA was "to promote transparency in the operation of government." Sussex Commons Assocs., LLC v. Rutgers, 210 N.J. 531, 541 (2012). To fulfill that purpose, OPRA requires that "government records shall be readily accessible for inspection, copying, or examination by the citizens of this State, with certain exceptions, for the protection of the public interest, and any limitations on the right of access . . . shall be construed in favor of the public's right of access." N.J.S.A. 47:1A-1; see also N. Jersey Media Grp., Inc. v. Twp. of Lyndhurst, 229 N.J. 541, 555 (2017).

The statute defines "government record" broadly, but also excludes twenty-one categories of items from the definition. See N.J.S.A. 47:1A-1.1; Mason v. City of Hoboken, 196 N.J. 51, 65 (2008). A "government record" is defined to include "any paper, written or printed book, document, drawing, map, plan, photograph, microfilm, data processed or image processed document, information stored or maintained electronically or by sound-recording or in a similar device, or any copy thereof[.]" N.J.S.A. 47:1A-1.1. To be considered a "government record," the item must be made, maintained, kept on file, or received "in the course of his or its official business by any

A-3460-18T1

officer, commission, agency or authority of the State or of any political subdivision thereof, including subordinate boards thereof." Ibid.

Despite this strong interest in transparency, OPRA is "not intended [to be] a research tool [that] litigants may use to force government officials to identify and siphon useful information." MAG Entm't, LLC v. Div. of Alcoholic Beverage Control, 375 N.J. Super. 534, 546 (App. Div. 2005). OPRA instead operates to make identifiable government records "readily accessible for inspection, copying, or examination." N.J.S.A. 47:1A-1. Accordingly, OPRA requires a party requesting access to a public record to specifically describe the record sought. Gannett N.J. Partners, LP v. Cty. of Middlesex, 379 N.J. Super. 205, 212 (App. Div. 2005); N.J.S.A. 47:1A-5(f). A proper OPRA request must identify with reasonable clarity the desired documents, and a party cannot satisfy this requirement by simply requesting all of an agency's documents. Bent v. Twp. of Stafford Police Dep't, Custodian of Records, 381 N.J. Super. 30, 37 (App. Div. 2005). And OPRA only allows requests for access to records – not requests for information. MAG Entm't, 375 N.J. Super. at 546-47.

OPRA does not require a records custodian "to conduct research among its records . . . and correlate data from various government records in the custodian's possession." Ibid. OPRA also imposes on public agencies "the

burden of proving that the denial of access is authorized by law," N.J.S.A. 47:1A-6, which is not satisfied by reliance on "conclusory and generalized allegations of exemptions[,]" but requires instead the specific basis for withholding the requested documents, Newark Morning Ledger Co. v. N.J. Sports & Exposition Auth., 423 N.J. Super. 140, 162 (App. Div. 2011). Under this framework, a "government record" is subject to disclosure unless a public agency can make a "clear showing" that one of the statute's listed exemptions is applicable. N. Jersey Media Grp., 229 N.J. at 555. That presupposes, of course, that the requested record is a "government record." And all we have said presupposes that the party to whom the request was sent is the custodian of the government record sought.

We agree with defendants that the manner in which the requested complaint-summonses were created demonstrates they are not government records in their possession but are records in the custody of the judiciary. While it may be local police who input the information that triggers the process, the final product is governed by other forces and the resulting product is maintained by others.

The production of a complaint-summons comes about through use of an electronic form created by the Administrative Office of the Courts. This process generates and lodges the complaint in the judiciary's computerized

A-3460-18T1

case management system. Rules 3:2-2 and 3:2-3 require the use of certain forms to generate a criminal complaint on either a summons, known as the CDR-1, or on a warrant, known as the CDR-2.

When intending to generate a criminal complaint, a law enforcement officer must utilize the judiciary's computerized case management system and enter information into certain designated fields. Other sections of the CDR forms are designated for completion by a judge or judicial officer. In short, while a local law enforcement officer begins the process, it is a judicial officer who retains the final authority as to whether the system will generate a CDR-1 or CDR-2. We agree with defendants that the manner in which the document is produced demonstrates that it is, in reality, not a government record maintained by the municipality but a record maintained by the judiciary. Plaintiffs place too much emphasis on how the process that creates the document commences without sufficient consideration for how it ends and where the document ends up. Rule 3:4-1(a)(1),[3] upon which plaintiffs rely, does not require a different result; the Rule in fact reveals the importance of

---

[3] Rule 3:4-1(a)(1) provides that "[a] law enforcement officer shall take a person who was arrested without a warrant to a police station where a complaint shall be prepared immediately," and further requires that when "issuance of a warrant is authorized by Rule 3:3-1(d) . . ., the complaint may be prepared on a Complaint-Warrant (CDR-2) form," or "[o]therwise, the complaint shall be prepared on a Complaint-Summons (CDR-1) form."

A-3460-18T1

generating a complaint-summons upon an arrest, not whether it constitutes a municipal record or a judiciary record.

To review, when a law enforcement officer makes an arrest without a warrant, the person arrested must be taken to a police station where the arresting officer is to immediately prepare a complaint. R. 3:4-1(a)(1). The Attorney General has directed all law enforcement agencies operating under the authority of the laws of this State to utilize a particular electronic interface system when preparing a complaint. Attorney General Law Enforcement Directive No. 2016-06 (Oct. 11, 2016). Pursuant to the directive:

> The State Police and AOC have established an interface between the Live Scan fingerprint system and eCDR. The interface transmits confirmed Live Scan records to the eCDR system so that when police generate a complaint, Live Scan record data automatically will populate many of the required fields on the eCDR. The interface in this way reduces the time needed to enter data, enhances data quality, and ensures positive identification of defendants.
>
> . . . .
>
> When a defendant is arrested and fingerprinted at the time of complaint processing, the Live Scan fingerprinting must be completed before beginning an eCDR complaint. Once the Live Scan confirmation is received, the law enforcement officer or agency shall proceed to the eCDR system to begin generating a complaint.

The Supreme Court has recognized that as the State's chief law enforcement officer, the Attorney General retains the authority to adopt guidelines, directives, and policies that bind police departments statewide. Paff v. Ocean Cty. Prosecutor's Office, 235 N.J. 1, 19 (2018). While a Millville police officer commences preparation of a complaint-summons through use of the electronic interface system described in the Attorney General's directive, the document is completed by eCDR and the finished product is maintained by the municipal court or, in a larger sense, the judiciary.

We also observe that it may be true that the Millville Police Department has access to the electronic interface system, but that does not alter the fact that the record is maintained by the judiciary. We conclude that it is to the judiciary that plaintiffs must direct their request for the production of such records. The burden should not be placed on local authorities to search for records maintained by others for those records that fall into plaintiffs' broad requests. See MAG Entm't, 375 N.J. Super. at 546-47.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3460-18T1