959 A.2d 1227 (2008)
403 N.J. Super. 609
John A. BART, Claimant-Respondent,
v.
CITY OF PATERSON HOUSING AUTHORITY, Respondent-Appellant.
Docket No. A-5826-06T1.
Superior Court of New Jersey, Appellate Division.
Submitted October 7, 2008.
Decided November 21, 2008.
*1228 Rogut McCarthy, Cranford, for appellant (Daniel J. McCarthy and Colleen E. Patterson, on the brief).
John A. Bart, respondent pro se.
Anne Milgram, Attorney General, for respondent Government Records Council (Lewis A. Scheindlin, Assistant Attorney General, of counsel; Debra A. Allen, Deputy Attorney General, on the brief).
Before Judges WEFING, YANNOTTI and LeWINN.
The opinion of the court was delivered by
WEFING, P.J.A.D.
City of Paterson Housing Authority ("Authority") appeals from a Final Decision of the Government Records Council ("Council") finding that the custodian of the Authority's records knowingly and willfully denied claimant John A. Bart access to government records in violation of the Open Public Records Act ("OPRA"), N.J.S.A. 47:1A-1 to -13, and assessing a *1229 penalty of $1,000. After reviewing the record in light of the contentions advanced on appeal, we reverse.
John A. Bart, Esq., is an attorney employed by Northeast New Jersey Legal Services, Inc. ("Northeast"). He is the supervisor of Northeast's housing litigation unit.
On July 22, 2005, Bart wrote the following letter to the Executive Director of the Authority:
It's come to my attention that the Paterson Housing Authority is discouraging Spanish speaking applicants, Section 8 recipients, Public Housing residents, and other visitors to 60 Van Houten Street from accessing the Housing Authority's services without having an interpreter.
For example, there is a sign in your lobby written in Spanish that, translated, says, "If you do not bring someone who speaks English and can translate for you, lamentably you will not be helped". This sign is in Spanish only and has the Housing Authority's name and address at the top. At the bottom, it refers to the Leasing and Occupancy Department.
I have seen similar expressions of this policy in Paterson Housing Authority documents.
Please note that the Paterson Housing Authority's English Only Policy is in violation of your own Section 8 and Public Housing Administrative Plans. Furthermore, this policy may be in violation of Federal directives concerning the accessibility of translation services at the sites of Federal Aid recipients, such as the Paterson Housing Authority.
Please immediately take down the sign in the Housing Authority lobby at 60 Van Houten Street, cease distribution of documents enforcing this English Only Policy and direct all Paterson Housing Authority employees and the public that the English Only Policy [is] no longer in effect.
Please respond to this letter in writing. Please also accept this as a request for the Open Public Records Act and the New Jersey Right to Know Law for a copy of the Spanish language notice referred to above that is currently posted in the lobby of 60 Van Houten Street. Also, accept this as a request under the Open Public Record[s] Act and the New Jersey Right to Know Law[1] for a copy of all Paterson Housing Authority forms, correspondence and directives which reference the Housing Authority's requirement or preference that Spanish speakers bring an interpreter in order to be served.
Please provide me with the citation to any law or any regulation, directive, or Paterson Housing Authority Plan that authorizes this preference or requirement that Spanish speakers bring an interpreter to be served.
On August 2, 2005, Gwendolyn Morrison, Director of Leasing and Occupancy for the Authority, responded to Bart with the following letter:
I am in receipt of your letter dated July 22, 2005 regarding translation services. Please be advised that the PHA does not require or have a policy requiring Spanish-speaking tenants to bring an interpreter with them to translate when seeking assistance from the Leasing and Occupancy Department. While I believe that there was a sign in our lobby advising tenants of the PHA's preference that tenants bring interpreters *1230 when seeking assistance from the Leasing and Occupancy Department, that sign was previously removed from the lobby. We do, however, thank you for bringing this to our attention.
Please be advised the PHA employs several Spanish speaking employees in the Leasing and Occupancy Department that can and do provide translation services on a day-to-day basis. However, the PHA does encourage its tenants to bring an independent party that can interpret for them if such an individual is available to them. The PHA affords tenants this option simply to avoid any confusion or concerns regarding the accuracy of the translation.
In addition, please be advised that the PHA previously removed the sign regarding translation services from the lobby. Furthermore, there are no PHA documents stating that tenants must bring their own interpreters. Thus, the PHA cannot provide you with a copy of any such sign or documents.
Thank you for your attention to this matter.
On August 3, Bart wrote again to the Executive Director of the Authority, stating that she had not responded to his requests under the Open Public Records Act and New Jersey's Right to Know Law for a copy of the Spanish language notice which had been posted in the Authority's lobby. He also stated that she had not responded to his request for "a copy of all Paterson Housing Authority forms, correspondence and directives which reference the Housing Authority's requirement or preference that Spanish speakers bring an interpreter in order to be served." He asked to be provided with those documents "as soon as possible" and noted that if she did not have all of them, she should provide those that she did have.
Bart did not wait for a further response. The following day, he filed a complaint with the Council, contending he had improperly been denied access to government records. He attached to his complaint a chronological summary and copies of the correspondence which had been exchanged. In this summary, he stated:
The [Authority], pursuant to its Admissions and Continued Occupancy Policy (for public housing recipients) and its Administrative Plan (for Section 8 recipients), should provide translation services for Spanish speaking clients. I have included excerpts of the Policy and Plan. However, several [Authority] documents show that the [Authority] is discouraging or refusing to serve clients who do not bring their own interpreters. I have included one such document.
Among the documents Bart attached to his complaint was an undated sheet on the letterhead of the Authority. The second paragraph of this document read as follows:
The Leasing & Occupancy Department office hours are Monday thru Thursday between the hours of 8:30 a.m.-3:30 p.m. No one will be seen on Friday's [sic]. Please bring your own interpreter.
On August 23, 2005, Morrison, in her capacity as Director of the Leasing & Occupancy Department, again wrote to Bart. She informed him that the Authority had retrieved a copy of the sign to which he had referred, and she enclosed a copy of it with her letter.
The sheet was headed "Housing Authority of the City of Paterson," with its address. It contained the following notice, in large, bold type:
SI USTED NO TRAE UNA PERSONA QUE HABLE INGLES Y PUEDA TRADUCIR POR USTED LAMENTABLEMENTE NO SERA ATENDIDO.
Beneath, was typed "Leasing & Occupancy Department."
*1231 On September 2, the Authority filed its answer with the Council. It noted that Bart already had in his possession "the only document, other than the sign, that references the [Authority's] desire for Spanish-speaking tenants to bring their own interpreter" and further noted that it had provided a copy of that sign to Bart on August 23, 2005. The answer was signed by the Authority's Executive Director. Attached to that answer was the certification of Morrison. She stated that the sheet Bart had attached to his complaint was the "cover letter to [an Authority] Application for Housing." She said it was available to any member of the public who requested an application and had not been supplied in response to Bart's request of July 22, 2005, because the Authority did not consider it responsive to the request in light of the fact that it did not refer to an Authority directive or policy.
Both parties declined the opportunity to mediate the dispute. N.J.S.A. 47:1A-7b. It was thus submitted to the Council for decision.
The Council concluded that it was immaterial that Bart may already have had in his possession a copy of the cover sheet and that the Authority should have timely provided another copy to him. It also concluded that the Authority's response to the request for the sign posted in the lobby had been so vague as to constitute a denial under OPRA. It referred the matter to the Office of Administrative Law ("OAL") for a determination of whether the Authority's conduct constituted a willful and knowing violation of the statute.
Two witnesses testified at the hearing in the OAL  Morrison and Bart.[2] The administrative law judge issued a written opinion in which he concluded that Morrison had intentionally not supplied the material Bart had requested. He recommended that the Authority pay a penalty of $1,000 for the willful non-compliance. The Council modified and adopted this decision; specifically, it modified the penalty and directed that it be imposed upon Morrison individually. When the Authority forwarded its check for $1,000 to the Council, the Council refused to accept it, asserting that Morrison had to pay the penalty from her personal funds.
The Authority has appealed. It contends that the Council erred in finding that there was a knowing or willful violation of OPRA and that Morrison was denied due process when the Council assessed the penalty upon her personally.
OPRA represents the articulation of New Jersey's public policy that "government records shall be readily accessible for inspection, copying, or examination by the citizens of this State...." N.J.S.A. 47:1A-1. "The purpose of OPRA `is to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process.'" Times of Trenton Publ'g Corp. v. Lafayette Yard Cmty. Dev. Corp., 183 N.J. 519, 535, 874 A.2d 1064 (2005) (quoting Asbury Park Press v. Ocean County Prosecutor's Office, 374 N.J.Super. 312, 329, 864 A.2d 446 (Law Div.2004)).
"Under OPRA, as under its predecessor statute, the Right to Know Law ... the Legislature continued `the State's longstanding public policy favoring ready access to most public records.'" MAG Entm't LLC v. Division of Alcoholic Beverage Control, 375 N.J.Super. 534, 544, 868 A.2d 1067 (App.Div.2005) (quoting Serrano v. South Brunswick Twp., 358 N.J.Super. 352, 363, 817 A.2d 1004 (App.Div.2003)).
*1232 The statute provides that the custodian of a government record shall permit the record to be "inspected, examined, and copied by any person during regular business hours[.]" N.J.S.A. 47:1A-5. The custodian of a government record must respond to a request for access to a government record within seven business days of receiving the request. N.J.S.A. 47:1A-5i. A person who believes he has improperly been denied access to a government record has the option of either commencing a proceeding in Superior Court or filing a complaint with the Council. In any such proceeding, the public entity has the burden of proving that access was properly denied. N.J.S.A. 47:1A-6. Further, the statute directs that a public official, officer, employee or custodian who "knowingly and willfully violates" the statute and "unreasonably denie[s] access under the totality of the circumstances" is, upon an initial violation, subject to a civil penalty of $1,000. N.J.S.A. 47:1A-11.
OPRA defines a government record as:
any paper, written or printed book, document... or any copy thereof, that has been made, maintained or kept on file in the course of ... its official business by any ... commission, agency or authority of the State or of any political subdivision thereof....
[N.J.S.A. 47:1A-1.1.]
Not every paper prepared by a public employee fits within the definition of a government record for purposes of OPRA. O'Shea v. West Milford Bd. of Educ., 391 N.J.Super. 534, 538-39, 918 A.2d 735 (App. Div.), certif. denied, 192 N.J. 292, 927 A.2d 1291 (2007). The parties have proceeded on the assumption that this sign and cover letter fit within the purview of that definition although the record is entirely silent as to the circumstances of their creation. We shall accept that assumption for purposes of this opinion.
Further, the Authority has not contended that Bart's request of July 22, 2005, should be considered overbroad. We shall, therefore, not consider whether it could have been properly rejected on the basis that it sought to require the Authority to conduct an "open-ended search[]" of its files. MAG, supra, 375 N.J.Super. at 549, 868 A.2d 1067.
As we made clear in Paff v. N.J. Dep't of Labor, 392 N.J.Super. 334, 920 A.2d 731 (App.Div.2007), our review of final decisions of the Council
is narrowly circumscribed. Our role is to determine "`whether the findings made could reasonably have been reached on sufficient credible evidence present in the record' considering `the proofs as a whole'" and "with due regard to the opportunity of the one who heard the witnesses to judge of their credibility." We "may not `engage in an independent assessment of the evidence....'" We give great deference to administrative decisions and we will accord a strong presumption of reasonableness to the decision of an administrative agency. We do not, however, simply rubber stamp the agency's decision. An administrative decision will be reversed only when it is found to be "arbitrary, capricious or unreasonable or it is not supported by substantial credible evidence in the record as a whole."
[Id. at 340, 920 A.2d 731 (citations omitted).]
We are satisfied, nonetheless, that the Council's decision should be reversed.
Several factors inform our analysis. The statute authorizes an individual either to file an action in Superior Court or to file a complaint with the Council if the individual has been "denied access to a government record...." N.J.S.A. 47:1A-6. It is undisputed that Bart at all times had within his possession a copy of the cover *1233 letter at issue; indeed, he attached a copy to the complaint he filed with the Council. He could not have been denied access to the document, however, if he already had the document he sought. Bent v. Twp. of Stafford Police Dep't, 381 N.J.Super. 30, 34, 38, 884 A.2d 240 (App.Div.2005). Requiring the Authority to duplicate another copy and send it to Bart does not, in our judgment, advance the purpose of OPRA, which is to ensure an informed citizenry. Times of Trenton, supra, 183 N.J. at 535, 874 A.2d 1064. Further, even if we were to determine that the Authority should have done so, we cannot conclude that the failure constituted a knowing and willful violation, justifying the imposition of a civil penalty.
We reach the same conclusion with respect to the sign which had been posted in the Authority's lobby, although for different reasons. The Council found in its initial decision that the Authority's response of August 2, which stated that the sign had been removed and thus could not be provided, violated OPRA because it "was so vague that it could not be determined if the requested sign did not exist or if the request was being denied." The Council forwarded the matter to the OAL to determine, with respect to the sign, whether that response was a knowing and willful violation of OPRA.
The testimony before the administrative law judge was clear that upon receipt of Bart's initial request, the Authority consulted with counsel and that all subsequent correspondence was the product of consultation with counsel. From the tenor of the letter of July 22, we cannot consider it unreasonable for the Authority to have consulted with its counsel and requested the assistance of counsel to formulate a proper response.
When the Council decided to forward the matter to the OAL, it stated that a knowing and willful violation of the statute would require that the custodian must have had actual knowledge that his actions were wrongful, and that there had to be a positive element of conscious wrongdoing. It cited Fielder v. Stonack, 141 N.J. 101, 661 A.2d 231 (1995), and Berg v. Reaction Motors Div., 37 N.J. 396, 181 A.2d 487 (1962), for these principles.
We decline to equate a public entity's decision to consult with its counsel and to seek the assistance of counsel in drafting correspondence with a knowing and willful violation of the statute.
Because we have concluded that the civil penalty was improperly assessed in the first instance, it is unnecessary to consider whether the Council correctly insisted upon payment from Morrison, as opposed to payment by her employer, the Authority.
The order under review is reversed.
NOTES
[1] The Right to Know Law had been repealed by the time of Bart's letter. N.J.S.A. 47:1A-1 to -4 (repealed 2002).
[2] Bart's direct "testimony" consisted of a narrative account, combining a factual recitation with his conclusions as to procedures and motivation.