NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-5573-14T1

JEFF CARTER,

 Appellant,

v.

FRANKLIN FIRE DISTRICT
NO. 1 (Somerset),

 Respondent.

_____________________________

 Argued October 5, 2017 – Decided November 20, 2017

 Before Judges Simonelli, Rothstadt and Gooden
 Brown.

 On appeal from Government Records Council,
 Compaint No. 2011-76.

 Jeff Carter, appellant, argued the cause pro
 se.

 Dominic P. DiYanni argued the cause for
 respondent Franklin Fire District No. 1 (Eric
 M. Bernstein & Associates, LLC, attorneys; Mr.
 DiYanni, of counsel and on the brief).

 Raymond R. Chance, III, Assistant Attorney
 General, argued the cause for respondent
 Government Records Council (Christopher S.
 Porrino, Attorney General, attorney; Mr.
 Chance, of counsel; Debra A. Allen, Deputy
 Attorney General, on the brief).

PER CURIAM

 Complainant, Jeff Carter, appeals from the Government Records

Council's (GRC) final decision adopting an Administrative Law

Judge's (ALJ) finding that respondent, Franklin Fire District No.

1 (District), did not knowingly and willfully fail to disclose

records that Carter requested under the Open Public Records Act

(OPRA), N.J.S.A. 47:1A-1 to -13, even though it had violated the

act. Carter's primary claim on appeal is that the GRC's decision

was not supported by the evidence. He also argues the GRC failed

to properly advise him of its rejection of a supplemental

certification he filed in support of his claim and that it should

have imposed a civil penalty on the District's legal counsel who

responded to his OPRA request. We disagree and affirm.

 The facts gleaned from the record are undisputed and are

summarized as follows. On January 21, 2011, Carter submitted an

OPRA request to the District for all annual financial disclosure

statements (FDS) filed by its commissioners from 2000 to 2011.

The District, through its attorney, William T. Cooper, denied the

request on February 10, 2011, explaining that the FDS Carter sought

were not maintained by its office and were instead available to

Carter through the Franklin Township Municipal Clerk's office.

 2 A-5573-14T1
 Carter filed an OPRA request with the town clerk and received

all of the documents he requested from the District. He also

submitted a second OPRA request to the District requesting

different documents. Among the documents he received in response

to that request, Carter found a January 25, 2011 email from the

District's administrative assistant, Debi Nelson, who is Carter's

sister, to Melissa Kosensky, the commissioner who served as the

District's custodian of records. The email included some of the

2007 FDS that were on file with Nelson's office, which were the

documents Cooper stated were not in the District's possession.

 Carter filed a complaint with the GRC, challenging the

District's denial of his first OPRA request and access to the

requested records. The District filed a Statement of Information

(SOI) with the GRC, explaining the reasons it was delayed in

responding to Carter's first OPRA request. The SOI stated the

delay was the result of receiving about eighteen OPRA requests in

ten days from Carter, its custodian being away for training during

part of this time period, and the custodian referring the request

to its counsel for advice on how to respond. The District denied

that the custodian's "actions r[o]se to the level of a knowing and

willful violation of [OPRA]." The SOI did not reveal that the

District had copies of the 2007 FDS it included in its response

to Carter's second OPRA request. In response to the SOI, Carter

 3 A-5573-14T1
filed a certification with the GRC that attached the January 25,

2011 email with the 2007 FDS that proved the District had in its

possession some of the requested documents that it failed to

disclose.

 On June 26, 2012, the GRC reviewed Carter's complaint and

found that the custodian violated OPRA by not timely responding

to Carter's OPRA request within seven business days, and by denying

access to the FDS as evidenced by the January 25, 2011 email. It

issued an interim order requiring the custodian to disclose the

responsive 2007 FDS to Carter, in addition to any other responsive

statements it had on file from 2000 to the date the OPRA request

was made. It also ordered that if no other FDS existed, the

custodian was to submit a certification attesting to that fact.

On July 2, 2012, the District provided Carter with documents in

response to the GRC's order.

 In anticipation of the GRC's scheduled review of the matter,

Carter prepared a certification in which he included a copy of a

January 27, 2011 email from Kosensky to Cooper transmitting the

2007 FDS that she received from Nelson two days earlier. In that

email, Kosensky stated "[i]t looks like we only have copies from

2007. I am assuming that [Carter] can get the rest from the

township." Carter argued in the certification that the document

established that when Cooper responded to Carter's OPRA request,

 4 A-5573-14T1
he and Kosensky knew the District was in possession of at least

some responsive documents.

 Carter's counsel transmitted the certification by email to

the GRC on August 24, 2012. The GRC responded the same day by

informing Carter's counsel that the "submission will not be

reviewed [by the GRC]" because, (1) the matter was already

scheduled before the council for its review of the executive

director's "Findings and Recommendations"; and, (2) its

regulations did "not include a provision for submissions in advance

of the Council's meeting" where there is no hearing being held and

the GRC made no request for additional information. According to

Carter, his attorney never informed him of the GRC's rejection of

his submission.

 At its August 28, 2012 meeting, the GRC determined the

custodian complied with the June 26 interim order. It again relied

on the January 25, 2011 email and found that the District violated

OPRA because it did not release documents it obviously had in its

possession. It also found that Carter was a prevailing party

entitled to an award of counsel fees and directed that the matter

be transmitted to the Office of Administrative Law (OAL) for a

hearing to determine the amount of the award and whether the

District's denial of Carter's initial request was a knowing and

willful OPRA violation.

 5 A-5573-14T1
 The OAL scheduled a hearing before an ALJ. At the hearing,

Carter and Nelson testified on behalf of Carter.1 Kosensky

testified for the District. Carter testified about the January

25 and January 27 emails, and explained they proved that two weeks

before Cooper responded to his initial request and explained the

District did not maintain the FDS, Nelson and Kosensky had

exchanged an email that contained some of the requested FDS and

Kosensky provided it to Cooper. He argued that because the

District possessed some responsive documents, it was required to

disclose whatever it possessed, regardless of the town clerk

serving as the repository for the FDS. Carter admitted he promptly

made an OPRA request for the same documents from the town clerk,

who complied and forwarded to him the FDS that he sought.

 Nelson testified that after receiving her brother's OPRA

request, she spoke with Cooper and explained she had copies of the

2007 FDS in the District's file and she assumed they were released

to Carter. Only later, upon receiving the GRC complaint, did she

learn that the 2007 FDS were not disclosed.

 Kosensky testified she was the District's records custodian

from 2010 to 2011. She received some responsive documents to the

OPRA request from Nelson and forwarded them to Cooper. She

1
 By that time, Nelson no longer worked for the District.

 6 A-5573-14T1
admitted that she thought the 2007 FDS were responsive to Carter's

request, but agreed with Cooper's response to Carter that advised

him to direct his request to the Municipal Clerk's office, and did

not feel that Cooper's response was an attempt to intentionally

withhold documents. It was her opinion, however, that Carter

should have been given a copy of the 2007 FDS that the District

had on file. Finally, she stated that she received no training

about OPRA when she was appointed to the year-long interim

position.

 On April 23, 2015, the ALJ issued an Initial Decision. The

judge's comprehensive nineteen-page written decision specifically

found that Nelson sent the January 25, 2011 email to Kosensky, who

then sent the January 27, 2011 email to Cooper. Despite those

emails, the ALJ concluded that the District's custodian did not

knowingly and willfully violate OPRA and that her mistake in

denying the OPRA request was negligent. Relying on the

commissioner's demeanor during the hearing, the ALJ stated that

the commissioner "did not impress [the ALJ] as anything other than

a worker who was doing her job to the best of her ability without

an ulterior motive of denying Carter to access to records he

requested." The ALJ recommended against assessing any civil

penalties under OPRA. The ALJ then determined the amount of the

 7 A-5573-14T1
counsel fees and costs to be awarded to Carter as directed by the

GRC.

 On June 30, 2015, the GRC issued its final decision, adopting

its Executive Director's supplemental findings and recommendations

that were based upon the ALJ's Initial Decision. Addressing

exceptions made by Carter to the ALJ's decision, the GRC explained

again its reason for rejecting Carter's August 12, 2012

certification. This appeal followed.

 We begin our review of the GRC's decision by acknowledging

that it "is governed by the same standards as review of a decision

by any other state agency," Fisher v. Div. of Law, 400 N.J. Super.

61, 70 (App. Div. 2008), and is therefore limited. In re

Stallworth, 208 N.J. 182, 194 (2011). We "will not overturn an

agency's decision unless it violates express or implied

legislative policies, is based on factual findings that are not

supported by substantial credible evidence, or is arbitrary,

capricious or unreasonable." Fisher, supra, 400 N.J. Super. at

70.

 "Our standard of review is plenary with respect to" the GRC's

interpretation of OPRA. Asbury Park Press v. Cty. of Monmouth,

406 N.J. Super. 1, 6 (App. Div. 2009), aff'd, 201 N.J. 5 (2010);

see also O'Shea v. Twp. of W. Milford, 410 N.J. Super. 371, 379

(App Div. 2009). "[D]eterminations about the applicability of

 8 A-5573-14T1
OPRA and its exemptions are legal conclusions . . . and are

therefore subject to de novo review." Carter v. Doe, 230 N.J.

258, 273-274 (2017). However, "under our deferential standard of

review, we give weight to the GRC's interpretation of OPRA." McGee

v. Twp. of E. Amwell, 416 N.J. Super. 602, 616 (App. Div. 2010).

"We do not, however, simply rubber stamp the agency's decision."

Bart v. City of Paterson Hous. Auth., 403 N.J. Super. 609, 618

(App. Div. 2008) (citations omitted), certif. denied, 198 N.J. 316

(2009).

 In our review, we are mindful of the public policy in these

matters. "Any analysis of OPRA must begin with the recognition

that the Legislature created OPRA intending to make government

records 'readily accessible' to the state's citizens 'with certain

exceptions[] for the protection of the public interest.'" Gilleran

v. Bloomfield, 227 N.J. 159, 170 (2016) (alteration in original)

(quoting N.J.S.A. 47:1A-1). OPRA expresses New Jersey's public

policy favoring transparency in government and disclosure of

government documents. See N.J.S.A. 47:1A-1. It endeavors to

"maximize public knowledge about public affairs in order to ensure

an informed citizenry and to minimize the evils inherent in a

secluded process." Times of Trenton Publ'g Corp. v. Lafayette

Yard Cmty. Dev. Corp., 183 N.J. 519, 535 (2005) (citation omitted).

 9 A-5573-14T1
"[A]ny limitations on the right of access . . . shall be construed

in favor of the public's right of access[.]" N.J.S.A. 47:1A-1.

 We turn first to Carter's primary contention that the GRC

should have imposed penalties on Kosensky and Cooper because the

District's withholding of the 2007 FDS was knowing and willful.

OPRA requires that a custodian or any other public official or

employee "who knowingly and willfully violates [OPRA] . . . and

is found to have unreasonably denied access under the totality of

the circumstances, shall be subject to a civil penalty. . . ."

N.J.S.A. 47:1A-11(a). To determine whether a custodian knowingly

and willfully violated OPRA, "the custodian must have . . . actual

knowledge that his actions were wrongful, and . . . there [must]

be a positive element of conscious wrongdoing." Bart, supra, 403

N.J. Super. at 619; see also Fielder v. Stonack, 141 N.J. 101

(1995); Berg v. Reaction Motors Div., Thiokol Chem. Corp., 37 N.J.

396 (1962).

 If there is a knowing and willful OPRA violation by a public

body or custodian of records, "and [they are] found to have

unreasonably denied access under the totality of the

circumstances, the [GRC] may impose the penalties provided for in

[OPRA]." N.J.S.A. 47:1A-7(e).

 N.J.S.A. 47:1A-11 provides a valuable means
 to compel compliance with OPRA by public
 officials, officers, employees and records

 10 A-5573-14T1
 custodians who might otherwise flout OPRA's
 requirements and willfully and knowingly
 deprive the public of access to government
 records. The civil penalties permitted under
 N.J.S.A. 47:1A-11 help ensure that records at
 all levels of government, including the
 highest levels of our State government, are
 not willfully and knowingly withheld in an
 effort to shroud possible wrongdoing from the
 public's view or deny access to government
 records to which every citizen is entitled.
 It is inconsistent with the plain language of
 N.J.S.A. 47:1A-11 and OPRA's purpose to shield
 the recalcitrance and obfuscation of public
 officials, officers, custodians and employees
 from the imposition of a civil penalty. . . .

 [N. Jersey Media Grp., Inc. v. State Office
 of the Governor, 451 N.J. Super. 282, 309
 (App. Div. 2017) (emphasis added).]

 We conclude the GRC's determination that the District did not

knowingly and willfully fail to disclose documents to Carter was

supported by substantial evidence in the record of the hearing

before the ALJ. R. 2:11-3(e)(1)(D). That evidence included proof

that the custodian's decision to forward documents to its counsel

to formulate a response to Carter lacked any indication that she

intended to deprive Carter of responsive documents, and therefore

did not warrant the imposition of civil penalties. See Bart,

supra, 403 N.J. Super. at 619 (finding no knowing and willful

violation of OPRA where a parking authority "consulted with its

counsel . . . to formulate a proper response"). In addition, it

was undisputed that Carter was never deprived of the requested

 11 A-5573-14T1
documents because he received them from the municipal clerk as

Cooper directed. While Cooper's response on behalf of Kosensky

clearly violated OPRA, there was no demonstration that it was a

knowing and willful attempt to "shroud possible wrongdoing from

the public's view or deny access to government records to which

every citizen is entitled." N. Jersey Media Grp., Inc., supra,

451 N.J. Super. at 309.

 We find Carter's remaining arguments regarding Cooper's

liability for civil penalties, and the GRC's failure to consider

his supplemental certification before it agreed with him that the

District violated OPRA and referred the matter to the OAL, to be

without sufficient merit to warrant discussion in a written

opinion. R. 2:11-3(e)(1)(E). We only observe that Cooper acted

at all times as counsel, not as the custodian, and was never named

as a party to this action, see N. Jersey Media Grp., Inc., supra,

451 N.J. Super. at 288 n.1. And, the certification the GRC refused

to consider when it ruled in Carter's favor was admitted into

evidence and testified to by Carter before the ALJ in support of

his claim that the District's actions were knowing and willful.

 Affirmed.

 12 A-5573-14T1