**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS.   A-2726-16T1
                        A-2729-16T1

JEFF CARTER,

      Appellant,

v.

FRANKLIN FIRE DISTRICT NO. 1,

      Respondent.

_____

Argued December 18, 2018 – Decided March 15, 2019

Before Judges Rothstadt and Natali.

On appeal from the New Jersey Government Records Council, GRC Nos. 2014-137, 2014-138, 2014-266 and 2014-267.

CJ Griffin argued the cause for appellant (Pashman Stein Walder Hayden, PC, attorneys; CJ Griffin, on the briefs).

Dominic P. DiYanni argued the cause for respondent Franklin Fire District No. 1 (Eric M. Bernstein & Associates, LLC, attorneys; Dominic P. DiYanni, of counsel and on the brief).

Debra A. Allen, Deputy Attorney General, argued the cause for respondent Government Records Council (Gurbir S. Grewal, Attorney General, attorney; Raymond R. Chance, III, Assistant Attorney General, of counsel; Debra A. Allen, on the brief).

PER CURIAM

These appeals, which we consolidated for purposes of issuing a single opinion, are from three final agency determinations by the Government Records Council (GRC) dated April 26, 2016 and January 31, 2017, and accompanying interim orders. Complainant Jeff Carter maintains that the GRC committed error when it concluded he was not entitled to documents requested pursuant to the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, in their native electronic format. He further argues that the certifications from the custodian of records of the Franklin Fire District No. 1 (District) were not based on personal knowledge, did not sufficiently detail the scope of the searches for responsive records, and failed to confirm that the District provided all responsive e-mails, including blind carbon copy (bcc) e-mails. After a thorough review of the record, we affirm in part, reverse in part, and remand for further proceedings before the GRC.

2

I.

We detail the extensive procedural history related to Carter's two appeals separately, as it informs our decision.

March 2014 OPRA Requests

On March 19, 2014, Carter served two OPRA requests (March 2014 requests) upon the District seeking documents related to its purported violation of the Open Public Meetings Act (OPMA), as alleged in a letter from the Somerset County Prosecutor. His first request sought "[e]lectronic copies of all e-mails" sent or received by twelve District employees or agents from January 13, 2011 to May 30, 2011, containing the terms "OPMA" and/or "effective majority." The second March 19, 2014 request again sought "[e]lectronic copies of all e-mails" sent or received by eleven District employees or agents regarding audio recordings and videos that were referenced in an e-mail previously disclosed to the District in a prior OPRA request. With respect to e-mails, both March 2014 requests sought responsive documents in which any of the identified individuals were "cc['d]" or "bcc['d]."

The District determined that it needed to retain an outside IT vendor to conduct the search for responsive documents at a cost of $120 per an hour, and responded to the two March 2014 requests by demanding that Carter pay a

special service charge before it would produce any records. Carter objected to the imposition of a special service charge and after the District refused to waive the fee and produce responsive documents, Carter filed two denial of access complaints with the GRC.

The District responded with a statement of information (SOI) form and certification of Timothy Szymborski, the District's record custodian, in which he explained the need for a special service charge based on a fourteen-point analysis. He further emphasized that the use of an IT vendor was necessary, as the District has only one employee "to perform all the administrative office functions for the entire agency."

The GRC consolidated Carter's March 2014 complaints and on November 10, 2014, the executive director determined that the records custodian failed to prove "that the payment of a special service charge was reasonable and warranted," as the requests could have been adequately completed by the District's one employee. In an interim order, the GRC adopted these findings and directed the District to disclose the responsive records.

On December 24, 2014, Szymborski provided a second certification and e-mails responsive to the March 2014 requests. On January 6, 2015 Carter

4

objected to the District's compliance with the GRC's interim order because the records were provided in .pdf format, rather than in their native format.[1]

On April 21, 2015, the executive director made supplemental findings and recommendations regarding Carter's March 2014 requests, and rejected Carter's argument that the District did not comply because the records were produced in .pdf format, rather than in "their original electronic state." The executive director explained that a public agency's disclosure of e-mails in their original state exposes the records to alteration. The executive director also stated that Carter did not advance a reasonable argument for disclosure in the original format, or establish why the .pdf disclosure limited his access to the records. The GRC adopted these findings in an April 28, 2015 interim order, and deemed Carter a prevailing party, as it determined the District's proposed special service charge was unreasonable. It also ordered the District to provide Carter with all responsive records.

---

[1] A file in .pdf, or portable document format, is an electronic document that "retain[s] an image of the document as it would look viewed in the original application," and "facilitate[s] the exchange of documents between platforms regardless of originating application by preserving the format and content." The Sedona Conference, The Sedona Conference Glossary: E-Discovery & Digital Information Management 341, 347 (S. Harris, 4th ed. 2010). A document is in "native format" when in the "associated file structure defined by the original creating application," and "may require the original application" for viewing or searching. Id. at 341.

A-2726-16T1

July 2014 OPRA Requests

On July 2, 2014, Carter filed two additional OPRA requests (July 2014 requests) relating to "ethics issues." Both July 2014 requests sought "[c]omplete copies of any and all 'correspondence' including, but not limited to, e-mails, text messages, letters, [and] memos . . . " sent or received by nine District employees or agents, and relating to the Franklin Township Municipal Ethics Board.

Specifically, the first request sought documents regarding the "appeal of the Franklin Township's Municipal Ethics Boards' 'Resolution of Violation' issued on April 12, 2013 in the matter of James Wickman, Docket No. 11-01." The second request sought information regarding the "Franklin Township Municipal Ethics Board and State of New Jersey Local Finance Board." In both July 2014 requests, Carter "specifically requested in electronic format" all records that existed in electronic format, such as e-mails.

As it did with March 2014 requests, the District claimed an IT vendor was needed to conduct the search, and notified Carter that the IT vendor estimated it would take two hours to address Carter's requests, at a cost of $120 per hour. Carter objected to paying the special service charge and, upon the District's refusal to waive the fee and produce responsive records, filed two denial of access complaints with the GRC. Szymborski provided a SOI form

6

and certification on August 11, 2014, again explaining the fourteen-point analysis he conducted regarding the need for a special service charge.

Carter's two July 2014 complaints were also consolidated, and on April 21, 2015, the executive director made findings and recommendations determining that the District failed to prove that a special service charge was reasonable and warranted. On April 28, 2015, the GRC adopted the executive director's findings in an interim order, which directed the District to disclose records responsive to the July 2014 requests. Additionally, the order required the District to "provide a detailed explanation of the search conducted to locate all forms of responsive correspondence to the OPRA requests."

In response to the GRC's interim order, Szymborski produced District e-mails, printed and scanned into .pdf format, responsive to Carter's July 2014 requests and a short certification. The executive director, in supplemental findings and recommendations, noted that Szymborski failed to provide a detailed explanation of his search, as required by the GRC's April 28, 2015 interim order.

In a subsequent interim order, the GRC adopted the executive director's findings, ordered the District to fully comply with the April 28, 2015 order, and directed Szymborski to provide a more detailed explanation of his search for

7

responsive e-mails.  The GRC also directed the District to provide unredacted copies of a particular e-mail for in camera review.  Thereafter, on July 9, 2015, Carter submitted a letter brief to the GRC asserting the District's disclosure of responsive e-mails in .pdf format failed to satisfy his request to receive the records in their "original electronic format."

In a supplemental July 13, 2015 certification, Szymborski explained that he searched for records responsive to the July 2014 requests by first asking all of the District's commissioners and the one administrative employee for any responsive text messages or records on their personal e-mail accounts.  He also requested responsive records from the District's legal counsel.  He then stated he asked the administrative employee to search the District's office files for responsive correspondence or records.  Thereafter, the District's IT consultant searched for responsive e-mails located on the District's server.  Legal counsel then reviewed the responsive records for redaction.

After the GRC completed its in camera examination of an unredacted e-mail submitted by Szymborski, the executive director made supplemental findings and recommendations regarding Carter's July 2014 requests, and concluded that Carter failed to request the records in their "original electronic format" and demonstrate that he was entitled to disclosure of the records "in a

writable format." He added that because .pdf files are electronic, the District complied with his request for records "in electronic format." The GRC adopted the executive director's findings in an interim order.[2] Carter's appeals relating to the March 2014 and July 2014 requests followed.

On appeal, Carter maintains that Szymborski's certifications were deficient because he did not have personal knowledge of the searches conducted by the District's IT vendor and the District employees and, therefore, he could not competently attest to the scope and completeness of the District's searches. He requests that all individuals who searched for responsive records be required to submit competent certifications attesting to the completeness of the searches. Those supplemental certifications are also necessary, according to Carter, to address any inherent "conflict of interest" that existed when the District permitted requesting individuals to search their own e-mails.

---

[2] Carter submitted applications for attorney's fees for both his March and July 2014 requests, which the GRC granted in two separate April 26, 2016 final decisions. After Carter sought reconsideration of both final decisions, the GRC amended its fee awards but dismissed Carter's other arguments, as they "rehash[ed] previously submitted arguments or posit[ed] additional arguments from pending complaints [that were] currently before the Office of Administrative Law." The GRC further amended the attorney's fees awards in two January 31, 2017 final decisions. Carter does not raise any issues on appeal regarding the attorney's fees awards.

Carter further argues that Szymborski's deficient certifications are particularly concerning because despite the specificity of his March 2014 and July 2014 requests, none of the produced documents contain any e-mails that were bcc'd to, or from, any of the identified District employees. He further explains that he could not determine whether the District produced all bcc e-mails because it elected to provide the e-mails in .pdf format and the bcc line is not visible on any document. Carter argues that the matter should be reversed and remanded to require competent certifications that confirm that all responsive e-mails, including those with cc and bcc fields, have been produced.

Next, Carter claims that the GRC incorrectly determined he was not entitled to the requested e-mails in their original electronic format because: 1) he failed to "specifically request" the records in that format, 2) native electronic records are writable and can be altered, and 3) he failed to advance a reasonable argument for disclosure in that format.

Specifically, he contends that he "stated with reasonable clarity that he wanted the e-mails in their original electronic form," by requesting "[e]lectronic copies of all e-mails" and records "in electronic format" in March 2014 and July 2014, and objected to the District's production of .pdf documents on January 6, 2015, approximately two weeks after he received the records. Additionally,

Carter asserts that the unsubstantiated possibility that electronic records may be "altered" is not grounds for denial of access because OPRA is intended to allow wide access to government records, and fear of manipulation or alteration is not an enumerated exemption from public access.

## II.

We begin our review of the GRC's decisions by acknowledging that it "is governed by the same standards as review of a decision by any other state agency," Fisher v. Div. of Law, 400 N.J. Super. 61, 70 (App. Div. 2008), and is therefore limited. In re Stallworth, 208 N.J. 182, 194 (2011). We "will not overturn an agency's decision unless it violates express or implied legislative policies, is based on factual findings that are not supported by substantial credible evidence, or is arbitrary, capricious or unreasonable." Fisher, 400 N.J. Super. at 70.

"Our standard of review is plenary" with respect to the GRC's interpretation of OPRA. Asbury Park Press v. Cty. of Monmouth, 406 N.J. Super. 1, 6 (App. Div. 2009); see also O'Shea v. Twp. of W. Milford, 410 N.J. Super. 371, 379 (App Div. 2009). "[D]eterminations about the applicability of OPRA and its exemptions are legal conclusions . . . and are therefore subject to de novo review." Carter v. Doe, 230 N.J. 258, 273-274 (2017). However,

"under our deferential standard of review, we give weight to the GRC's interpretation of OPRA." McGee v. Twp. of E. Amwell, 416 N.J. Super. 602, 616 (App. Div. 2010). "We do not, however, simply rubber stamp the agency's decision." Bart v. City of Paterson Hous. Auth., 403 N.J. Super. 609, 618 (App. Div. 2008).

Further, when reviewing the GRC's actions here, we are mindful of the public policy in these matters. "Any analysis of OPRA must begin with the recognition that the Legislature created OPRA intending to make government records 'readily accessible' to the state's citizens 'with certain exceptions[] for the protection of the public interest.'" Gilleran v. Bloomfield, 227 N.J. 159, 170 (2016) (alteration in original) (quoting N.J.S.A. 47:1A-1). "OPRA was enacted 'to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process.'" Scheeler, 448 N.J. Super. at 342 (quoting Mason v. City of Hoboken, 196 N.J. 51, 64 (2008)).

### III.

With these principles in mind, and measured against the aforementioned standard of review, we address Carter's arguments. We agree with Carter that the GRC erred in accepting Szymborski's certifications, including his July 13,

2015 certification, as compliant with the District's obligations under OPRA, as the certifications were clearly not based on personal knowledge.

Pursuant to N.J.S.A. 47:1A-7(b), the GRC is responsible for enforcing OPRA and "facilit[ating] the resolution of disputes regarding access to government records." The regulations effectuated by the GRC "establish[] procedures for the consideration of complaints filed pursuant to [OPRA]." N.J.A.C. 5:105-1.1. The GRC may request any party to a complaint to "produce documents and legal certifications to the facts and/or arguments presented with respect to matters before the [GRC]." N.J.A.C. 5:105-2.1.

Additionally, in accordance with N.J.A.C. 5:105-2.4(a), records custodians must submit a "completed and signed statement of information (SOI) form . . . that details the custodians' position for each complaint filed . . . ." The GRC is also permitted to require records custodians "to submit, within prescribed time limits, additional information deemed necessary for the [GRC] to adjudicate the complaint." N.J.A.C. 5:105-2.4(l). Sworn statements must be "made on personal knowledge, setting forth only facts which are admissible in evidence and to which the [custodian] is competent to testify." See R. 1:6-6; North Jersey Media Grp. Inc. v. State, Office of Governor, 451 N.J. Super. 282, 300 (App. Div. 2017) (citing Rule 1:6-6, and reversing and remanding to require

defendant to submit a sworn statement based on personal knowledge to explain its search for responsive records).

The GRC and the District assert that Szymborski's SOIs, along with his certifications, sufficiently detail the District's search for responsive records. We disagree.

For example, in his July 13, 2015 certification, Szymborski attests that he requested District employees to search their private e-mails, and that the IT vendor conducted a search of the District's e-mail server in the presence of counsel. Szymborski does not certify that he conducted the searches himself, was present during the searches, or otherwise supervised the searches in any meaningful way to permit him to competently certify, as required by Rule 1:6-6, that all responsive e-mails were produced to Carter. Further, the SOIs do not provide any detail as to the process and scope of the search for responsive e-mails that would inform the July 13, 2015 certification.

The GRC concedes that that the e-mails produced by the District, while containing "cc" information, "do not show [bccs]." It maintains, however, that it inferred, based on Szymborski's SOIs and certifications, "that the responsive e-mails provided do not contain [bcc information]." It is undisputed that Carter explicitly requested bcc e-mails in his March 2014 requests, and "all" e-mails of

14

a defined period and subject matter in this July 2014 requests. Szymborski's May 16, 2014 and August 11, 2014 certifications and SOIs make no specific mention of whether the e-mails contained bccs and whether or not the District searched for those records.

Szymborski's December 24, 2014 certification similarly contains no explanation regarding who searched for responsive documents or his role in that process. Nor can we glean from that certification if Szymborski's search differed from the delegated search described in his July 13, 2015 certification related to the July 2014 requests. Accordingly, we conclude that the record does not contain substantial credible evidence to support the GRC's inference that the District searched for, and provided, responsive bcc e-mails, at a minimum. On remand, the District should provide supplemental certifications, prepared in accordance with Rule 1:6-6, detailing the scope of its search for documents responsive to the March 2014 and July 2014 requests.

In light of our requirement that on remand the District provide certifications based on personal knowledge, it is unnecessary for us to address Carter's conflict of interest argument. We note that Carter's claim that a conflict of interest exists when an individual searches his or her own e-mails for responsive records is, at best, a conclusory statement unsupported by anything

15

in this record. Our requirement that the District provide competent certifications should address the issue. To the extent Carter challenges any supplemental certification, he may raise that issue with the GRC, and then us, if necessary.

IV.

Carter also contends that the GRC improperly concluded he was not entitled to documents in their native, or original, electronic format because his July 2014 request did not specifically seek the documents in that format. The District interpreted Carter's requests for "electronic copies of all e-mails" and records "in electronic format," by printing the document, scanning them into .pdf format, and e-mailing the materials to him. We disagree with Carter that his March 2014 and July 2014 requests sought, with "reasonable clarity," responsive documents in their native format, and therefore conclude that the GRC's decision to deny Carter access to responsive materials in that format was neither arbitrary nor capricious.

A party seeking documents pursuant to OPRA is obligated to "identify with reasonable clarity those documents that are desired, and a party cannot satisfy this requirement by simply requesting all of an agency's documents." Bent v. Twp. of Stafford Police Dep't, Custodian of Records, 381 N.J. Super. 30, 37 (App. Div. 2005). "OPRA does not authorize unbridled searches of an

16

agency's property," ibid., that "would substantially disrupt agency operations." N.J.S.A. 47:1A-5(g). "[T]he custodian may deny . . . [it and] . . . attempt[] to reach a reasonable solution . . . that accommodates the interests of the requestor and the agency." Ibid. An appropriate request must state a "specific subject matter that [is] clearly and reasonably described with sufficient identifying information . . . ." Burke v. Brandes, 429 N.J. Super. 169, 176 (App. Div. 2012).

The District does not dispute that Carter's March 2014 and July 2014 requests properly identified a specific subject matter and were limited to particularized identifiable government records by date. However, while Carter requested the records in an electronic, rather than paper, medium, he failed to specify the format. Nowhere in his March 2014 and July 2014 requests did he specifically identify the electronic format for which he sought the documents or use the words "native" and "original." Instead, he asked for "electronic copies of all e-mails" and "records that exist in electronic format." An OPRA request "should not require the records custodian to undertake a subjective analysis to understand the nature of the request." Paff v. Galloway Twp., 229 N.J. 340, 355 (2017). Thus, in the absence of a specific request for documents in native or original format, the District complied with Carter's requests for electronic records by e-mailing him responsive documents in .pdf format.

Further, Carter improperly relies on N.J.S.A. 47:1A-5(d) to support his argument that he was entitled to the e-mails in native format. N.J.S.A. 47:1A-5(d), which permits a requestor "access to a government record . . . in the medium requested," does not refer to a document's format. Rather, it refers to producing a document in a particular medium, such as electronic, paper, or video. See Paff, 229 N.J. at 354 ("if the record is maintained in an electronic medium, the requestor is entitled to the document in electronic form."). By relying on N.J.S.A. 47:1A-5(d), Carter incorrectly conflates the medium, which a document is transmitted and viewed, from the format, which relates to the file structure of the original application that created the document.

We also reject Carter's assertion that he was deprived of the opportunity to clarify his requests to the District, as he was instead forced to file denial of access complaints due to the District's insistence on imposing special service charges. First, as discussed in detail above, after the GRC determined that Carter did not have to pay a special service charge, the District properly responded to Carter's requests by providing responsive records in .pdf format. Second, Carter did not withdraw his requests. Rather he challenged the District's production of .pdf documents in the context of a disputed matter before the GRC, after the District had already expended time and resources in responding to his

requests. We conclude that it is fundamentally unfair for Carter to add a previously undescribed format to his requests after the District had already produced documents in an appropriate electronic format. By "clarifying" his requests after production, the District was prevented from analyzing the requests as amended and raising specific, rather than general objections, such as the potential need for a special service charge to respond to requests for documents in native format.

However, Carter's failure to properly request documents in native format does not excuse the District from providing responsive government records. OPRA includes within the definition of government records, "any . . . document . . . data processed or image processed document, information stored or maintained electronically . . . or any copy thereof, that has been made, maintained[,] or kept on file in the course of his or its official business . . . ." N.J.S.A. 47:1A-1.1 (emphasis added). It is well-settled that e-mails are electronic records. See SSI Med. Servs., Inc. v. State Dep't of Human Servs., Div. of Med. Assistance & Health Servs., 146 N.J. 614, 624 n.1 (1996) ("E-mail is a computer-to-computer version of the postal service that enables users to send and receive messages and in some instances graphics or voice messages, either to individual recipients or in broadcast form to larger groups."). Further,

the electronically stored information "that is a part of a larger document," such as information stored within an e-mail, is a government record. Paff, 229 N.J. at 353. Thus, to the extent responsive government records exist only in native format, such as any bccs at issue here, the District must produce them in .pdf format, consistent with its previous productions. Any disputes regarding the sufficiency of the District's supplemental productions should be addressed by the GRC in the first instance.

Because we agree with the GRC that Carter failed to request documents in their native format with "reasonable clarity," we need not consider whether the GRC abused its discretion in denying documents in their native format because those records can be altered, or if Carter failed to advance a reasonable argument for disclosure in that format. We also need not address the District's concerns related to redacting documents in native format.

To the extent we have not specifically addressed any arguments raised by Carter, we find them without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, reversed in part, and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2726-16T1