**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2348-17T3

KATALIN GORDON,

     Appellant,

v.

CITY OF ORANGE TOWNSHIP
(ESSEX),

     Respondent.

_____

          Argued March 5, 2019 – Decided April 22, 2019

          Before Judges Yannotti and Natali.

          On appeal from the Government Records Council, GRC
          Complaint No. 2016-127.

          Katalin Gordon, appellant, argued the cause pro se.

          Debra Allen, Deputy Attorney General, argued the
          cause for respondent Government Records Council
          (Gurbir S. Grewal, Attorney General, attorney; Melissa
          Dutton Schaffer, Assistant Attorney General, of
          counsel; Debra Allen, on the brief).

PER CURIAM

Katalin Gordon appeals from a final decision of the New Jersey Government Records Council (GRC), dated December 19, 2017, which found that although the Custodian of Records (the Custodian) for the City of Orange Township (the City) violated the Open Public Records Act, (OPRA), N.J.S.A. 47:1A-1 to -13, the Custodian's violations did not rise to the level of a knowing and willful violation of OPRA and the Custodian did not unreasonably deny access to the requested records. We affirm.

We briefly summarize the relevant facts. On February 29, 2016, Gordon submitted a request to the City pursuant to OPRA for a copy of the City's last invoice for the purchase of compact discs (CDs) for use by the Clerk's Office. According to Gordon, the City makes audio recordings of meetings of its Council and when a copy of a recording is requested, the City provides the recording on a CD. Apparently, Gordon wanted the invoice to determine whether the City was charging an appropriate amount for copies of the recordings.

On March 15, 2016, Quinn M. Fields, a senior clerk, informed Gordon that the records she requested were not available because "[d]iscs are not ordered separately for the Clerk's Office." On March 17, 2016, Gordon submitted another OPRA request to the City, this time seeking "a copy of the last invoice

for CD[s] [that] the City ordered in bulk[.]"  In the request, Gordon stated that the CDs were those "being used by the Clerk's [O]ffice as medium [to] respon[d] to OPRA requests."

On March 18, 2016, Joyce L. Lanier, the Custodian of the City's records, wrote a memorandum to Jacqueline Harkeem in the City's Purchasing Department, and provided a copy of Gordon's OPRA request.  The Custodian asked Harkeem to respond to the OPRA request within seven business days. Fields emailed the memorandum to Harkeem, and sent copies to the Custodian and Jeanette Calderon-Arnold, the City's legal counsel.

Apparently, Harkeem told Fields she did not have access to the requested records, and that the Custodian would have to contact the City's Finance Department to obtain copies of the invoices.  On March 23, 2016, Calderon-Arnold followed up with Harkeem, and asked her to provide Fields with the required vendor and invoice information.  On April 15, 2016, Gordon asked Fields for an update on her OPRA request, but Fields did not respond.  Gordon also forwarded the request to the Custodian.  Gordon did not receive a response.

On April 20, 2016, Gordon filed a Denial of Access Complaint with the GRC.  In her complaint, Gordon stated that as of the date of her complaint, she had not received the records she had requested.  Gordon also stated that she had

communicated with Fields the previous day, and he informed her that the City was waiting for the City's Finance Department to provide him the requested documents. According to Gordon, Fields said he would contact the Finance Department and then reach out to her. Gordon claimed that thereafter, Fields did not contact her.

On April 27, 2016, Calderon-Arnold sent an email to Joy Lascari, the City's Chief Financial Officer. She asked Lascari to provide her with a copy of "the latest invoice (prior to March 27, 2016) for the purchase of [CDs]." She stated that Harkeem had informed her that Lascari's office would be able to track the purchase by vendor. Calderon-Arnold identified the vendors from whom the City had purchased CDs in 2015 and 2016. Calderon-Arnold sent Fields and the Custodian copies of the email.

On May 2, 2016, Fields was provided with two invoices, which he forwarded to Gordon that same day. The City thereafter submitted a Statement of Information to the GRC, which detailed the manner in which the City had handled Gordon's OPRA request. Gordon later responded to the City's Statement. She asserted that the City had provided her with copies of invoices, but they were not responsive to her request. She stated that the first invoice was non-responsive because it was for the purchase of sleeves for CDs, not for CDs.

Gordon stated that the second invoice was non-responsive because it was dated after she submitted her OPRA request.

On November 8, 2017, the Executive Director of the GRC issued findings and recommendations on Gordon's complaint. On November 14, 2017, the GRC accepted the Executive Director's recommendations and issued an Interim Order. The GRC found that the Custodian did not meet her burden of showing that she responded to Gordon's request within the time required by OPRA; therefore, the Custodian was "deemed" to have denied the request. The GRC also found that "[t]he Custodian may have unlawfully denied access" to the record that Gordon had requested.

The Interim Order (the Order) stated, "The Custodian must therefore search for and disclose a responsive invoice showing payments made for CDs prior to March 17, 2016. Should the Custodian determine that no record exists, she must certify to this fact." The Order stated that the Custodian must comply with its directive within five business days after receipt of the Order. The Order also stated, "The [GRC] defers analysis of whether the Custodian knowingly and willingly violated OPRA and unreasonably denied access under the totality of circumstances, pending [her] compliance with the [GRC's] Interim Order."

A-2348-17T3

On November 29, 2017, the Custodian provided the GRC with copies of two invoices, which she considered to be responsive to Gordon's OPRA request. On December 4, 2017, the GRC forwarded copies of the invoices to Gordon. On December 12, 2017, the Executive Director issued supplemental findings and recommendations to the GRC.

The Executive Director stated the Custodian had complied with the GRC's Interim Order, but she violated OPRA because she had not provided the invoices immediately and she unlawfully denied access to the invoices Gordon had requested. The Executive Director recommended, however, that the GRC find that

> [T]he evidence of record does not indicate that the Custodian's violations of OPRA had a positive element of conscious wrongdoing or were intentional and deliberate. Therefore, the Custodian's actions do not rise to the level of a knowing and willful violation of OPRA and unreasonable denial of access under the totality of the circumstances.

On December 19, 2017, the GRC adopted the Executive Director's findings and recommendations. This appeal followed.

On appeal, Gordon argues that there is sufficient evidence in the record to show that the City's unlawful denial of access to the records requested was deliberate. She further argues that the GRC failed to fulfill its mandate under

OPRA because it did not consider whether the City's "already established legal transgressions amounted to a willful denial of access" to the requested document. She therefore argues that the GRC should have imposed civil penalties upon the Custodian.

"Our review of a decision by the [GRC] . . . is governed by the same standards as review of a decision by any other state agency." See Fisher v. Div. of Law, 400 N.J. Super. 61, 70 (App. Div. 2008) (citing Serrano v. S. Brunswick Twp., 358 N.J. Super. 352, 362 (App. Div. 2003)). Therefore, our review is limited and the agency's decision must be upheld "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." See J.B. v. N.J. State Parole Bd., 229 N.J. 21, 43 (2017) (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)).

"In determining whether [an] agency['s] action is arbitrary, capricious, or unreasonable," we consider:

> (1) whether the agency's action violates express or implied legislative policies . . . ; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

[In re Stallworth, 208 N.J. 182, 194 (2011) (quoting In re Carter, 191 N.J. 474, 482-83 (2007)).]

OPRA provides that "government records shall be readily accessible for . . . the citizens of this State, with certain exceptions, for the protection of the public interest, and any limitations on the right of access . . . shall be construed in favor of the public's right of access[.]" N.J.S.A. 47:1A-1. Certain government records under OPRA, including budgets and bills, are required to be provided immediately. N.J.S.A. 47:1A-5(e).

The custodian must grant or deny requests for access to other government records no "later than seven business days after" the custodian receives the request. N.J.S.A. 47:1A-5(i). If the custodian does not respond to such a request within the time prescribed, the custodian is deemed to have denied access to the record. Ibid.

OPRA further provides that the GRC may impose civil penalties set forth in N.J.S.A. 47:1A-11 when it "determines . . . that a custodian has knowingly and willfully violated" OPRA, and finds that the custodian "unreasonably denied access under the totality of the circumstances[.]" N.J.S.A. 47:1A-7(e). However, civil penalties may only be imposed if the custodian had "actual knowledge that his [or her] actions were wrongful, and . . . there [must] be a

positive element of conscious wrongdoing." Bart v. City of Paterson Hous. Auth., 403 N.J. Super. 609, 619 (App. Div. 2008).

Here, the record supports the GRC's finding that the Custodian violated OPRA by failing to grant Gordon access to the responsive invoice within seven business days after receiving the request, as required by N.J.S.A. 47:1A-5(i). Furthermore, there is sufficient credible evidence in the record to support the GRC's finding that the City's violations were not knowing or willful, and the City did not "unreasonably den[y] access [to the records requested] under the totality of the circumstances." See N.J.S.A. 47:1A-7(e).

As we stated previously, on March 18, 2016, the day after receiving Gordon's OPRA request, the Custodian took steps to process the request. The Custodian did not provide the invoices to Gordon until May 2, 2016, and as the GRC found, they were not the invoices Gordon had requested. The Custodian failed to respond to the request within the time required, but the record supports the GRC's finding that the Custodian did not knowingly and willfully violate OPRA. The GRC reasonably found that, considering the totality of the circumstances, the Custodian's actions did not result in an unreasonable denial of access to the records requested.

Gordon argues, however, that the Custodian initially provided her with non-responsive records. According to Gordon, this shows the City was willfully attempting to deny her access to the records. We disagree. As stated previously, in her initial request, Gordon sought "a copy of the last invoice for CD[s]" that the City had purchased in bulk. The Custodian provided Gordon with a copy of a purchase order dated April 13, 2016.

Although the GRC found that the Custodian should have provided a copy of a purchase order that pre-dated Gordon's request, the Custodian could reasonably have interpreted the request to be for production of the "last invoice" before the Custodian provided its response. Moreover, Lascari stated she thought the OPRA request was for invoices from "2015 thr[ough] March 17, 2016[,]" and that the invoice provided was "the only possible response to the request other than" that the City had not purchased any CDs in 2015 and 2016 before the date of the request.

Furthermore, the Custodian complied with the GRC's Interim Order by providing responsive records within the time permitted. Therefore, the record supports the GRC's conclusion that the Custodian did not act willfully or purposefully, and did not "unreasonably deny[] [Gordon] access [to the records] under the totality of the circumstances." See N.J.S.A. 47:1A-7(e).

Gordon further argues that the GRC "failed its mandate." She contends the Executive Director did not explain why the City's "protracted lack of response, and the incorrect response [initially] given" do not amount to deliberate action, warranting imposition of a civil penalty under N.J.S.A. 47:1A-7(e). Again, we disagree. Here, the GRC determined the Custodian did not unreasonably deny access to the records under the totality of circumstances. It based that decision on a careful review of all the relevant facts.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION