**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0155-23

M.J.L. individually and o/b/o
J.N., a minor child,

     Plaintiff-Appellant,

v.

JAMES M. HEISER, in his official
capacity as School Business
Administrator/Board Secretary
and MOORESTOWN TOWNSHIP
PUBLIC SCHOOLS,

     Defendants-Respondents.

_____

Argued June 4, 2024 – Decided September 27, 2024

Before Judges Sumners and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-0674-23.

Walter M. Luers argued the cause for appellant (Cohn Lifland Pearlman Herrmann & Knopf LLP, attorneys; Walter M Luers, of counsel and on the briefs; Jamie Epstein, on the briefs).

Anne R. Myers argued the cause for respondents (Comegno Law Group, P.C. attorneys; Anne R. Myers, of counsel and on the brief; John B. Comegno II, on the brief).

PER CURIAM

Plaintiff M.J.L., individually and on behalf of a minor child J.N., appeals a Law Division order: (1) denying plaintiff's Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, requests of February 3, 2023, amended on March 1, 2023 (Request One), and February 20, 2023 (Request Two) to defendants Moorestown Township Public Schools (school district) and James M. Heiser, the school district's Business Administrator/Board Secretary and official records custodian; and (2) dismissing plaintiff's verified complaint. For the reasons that follow, we affirm in part, and reverse and remand in part for proceedings consistent with this opinion.

I.

On February 3, 2023, plaintiff submitted Request One to Heiser stating:

1. Date range from [March 1, 2008] to present:
Immediate access to the following financial records, N.J.S.A 47:1A-5(e):

(a) . . . Financial records consist of contracts, bills, invoices, receipts, ledger accounts, purchase orders, payments, both sides of canceled checks which document payment of services provided by . . . [Dr. Joseph Hewitt,

2

Psychiatrist] below to the [school district]. Access to the following records in 7 business days by 2/8/23, N.J.S.A 47:1A-5(i)(1):

(b) communications records/files referring [to Dr. Joseph Hewitt] in the subject or body of the communication record where the sender/recipient is [Dr. Joseph Hewitt]. Communication records consist of postings on social media, emails, memos, text messages, videos, audios, voice mail and correspondence, etc. The communication records include those on accounts provided by the [school district] and the private accounts of [Dr. Joseph Hewitt]. The communications records sought includes any attachments to said communication records.

2. Personnel information/records:

(a) It is further requested the Records Custodian provide the following additional Burnett v [County of Gloucester][1] contractor records for [Dr. Joseph Hewitt] which refer to [his] specific experiential, educational or medical qualifications including resumes, professional licenses and certifications.

. . . .

4. Submissions in legal proceedings: reports authored by [Dr. Joseph Hewitt] which were submitted in legal proceedings.

[(Boldface omitted).]

---

[1] Burnett v. Cnty of Gloucester, 415 N.J. Super. 506 (App. Div. 2010). Later cited as County of Gloucester because we cite another case naming"Burnett."

This request was later expanded to include the records sought from July 1, 2007 to February 3, 2023, and requested Dr. Hewitt's records related to three Office of Administrative Law (OAL) hearings in which he testified on behalf of the school district.[2]

On February 15, 2023, Heiser denied plaintiff's request. Six days later, in response to the denial, plaintiff, citing Paff v. N.J. Dep't. of Labor, 392 N.J. Super. 334, 341 (App. Div. 2007), submitted Request Two, asking defendants to:

> [p]roduce sworn statements by agency personnel setting forth in detail the following information: (1) the search undertaken to satisfy [Request One]; (2) the documents found that are responsive to [Request One]; (3) the determination of whether the document or any part thereof is confidential and the source of the confidential information; (4) a statement of the agency's document retention/destruction policy and the last date on which documents that may have been responsive to the [Request One] were destroyed.
> [(Boldface omitted).]

---

[2] The matters were: H.S. and N.S. o/b/o A.S. v. Moorestown Twp. Bd. of Educ., No. EDS 10210-07, 2008 N.J. AGEN LEXIS 232, at *11 (March 20, 2008); H.S. and N.S. o/b/o A.S. v. Moorestown Twp. Bd. of Educ., No. EDS 8402-07, 2007 N.J. AGEN LEXIS 681, at *9 (October 17, 2007); and Mooretown Twp. Bd. of Educ. v. T.B. o/b/o J.B., No. EDS 444-11, 2011 N.J. AGEN LEXIS 232, at *8-*9 (March 24, 2011).

A-0155-23

Plaintiff also demanded defendants produce "a log if [they] with[e]ld any records as privileged."

After the school district refused to provide the requested documents, plaintiff filed an order to show cause and verified complaint seeking compliance. The trial judge issued a written opinion and conforming order denying plaintiff's requests and dismissing plaintiff's verified complaint.[3] This appeal followed.

## II.

To promote transparency in government, Rivera v. Union Cnty. Prosecutor's Off., 250 N.J. 124, 141 (2022), OPRA was "enacted 'to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process,'" Simmons v. Mercado, 247 N.J. 24, 38 (2021) (quoting Mason v. City of Hoboken, 196 N.J. 51, 64 (2008)). Under OPRA, "all government records shall be subject to public access unless exempt," and "any limitations on the right of access . . . shall be construed in favor of the public's right of access." N.J.S.A. 47:1A-1.

"Government record" includes

> any paper, . . . document, . . . information stored or
> maintained electronically . . . , or any copy thereof, that

---

[3] The judge also denied the parties' respective requests for attorney's fees and costs. But those decisions are not the subject on appeal.

A-0155-23

has been made, maintained or kept on file in the course of his or its official business by any officer, commission, agency or authority of the State. . . . The term[] shall not include inter-agency or intra-agency advisory, consultative, or deliberative material.

[N.J.S.A 47:1A-1.1.]

Our courts have regularly held "agencies are only obligated to disclose identifiable government records." Burke v. Brandes, 429 N.J. Super. 169, 174 (App. Div. 2012) (citing MAG Ent., LLC v. Div. of Alcoholic Beverage Control, 375 N.J. Super. 534, 549 (App. Div. 2005)). Therefore, "[a] proper request 'must identify with reasonable clarity those documents that are desired.'" Ibid. (quoting Bent v. Twp. of Stafford Police Dep't, 381 N.J. Super 30, 37 (App. Div. 2005)). In other words, "[w]holesale requests for general information to be analyzed, collated and compiled" fall outside an agency's obligations under OPRA. Ibid. (quoting MAG Ent., 375 N.J. Super at 549).

We review de novo a trial judge's legal conclusions concerning access to public records under OPRA. N. Jersey Media Grp., Inc. v. Twp. of Lyndhurst, 441 N.J. Super. 70, 89 (App. Div. 2015) rev'd on other grounds, 229 N.J. 541 (2017). We will not disturb factual findings if they are supported by adequate, substantial and credible evidence. See Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 475 (1988).

6

Guided by these principles, we separately address plaintiff's record requests.

III.

Request One

1. Financial Records

The trial court determined "[p]laintiff's request for financial records and communications records [wa]s overly broad and thus denial of this request [by defendants] was proper." The court thus accepted defendants' contention that plaintiff "did not request specific records [maintained by the school district], but instead requested information and data" that, for the district to produce, "it would need to research, compile, and laboriously review an enormous number of documents."

Plaintiff argues the trial judge erroneously found the request for financial records involving Dr. Hewitt's service with the school district during a sixteen-year period was not sufficiently specific. Citing Loigman v. Kimmelman, 102 N.J. 98, 110 (1986) and Courier News v. Hunterdon Cnty. Prosecutor's Off., 358 N.J. Super. 373, 382-83 (App. Div. 2003), plaintiff maintains there is no evidence defendants were burdened to obtain these records. Plaintiff stresses that Heiser's summary judgment certification fails to articulate how the school

district "store[s] records, for how long, what searches they ran (if any), who is the point of contact for the use of outside experts like Dr. Hewitt in OAL proceedings, or what . . . [d]efendants['] search capabilities are (and any related limitations on those capabilities)." Moreover, plaintiff argues that if there is an administrative burden to obtain the records, the school district "should not have denied access . . . [but] should have requested a special service charge" per N.J.S.A. 47:1A-5(c).

We conclude the financial records request was sufficiently specific, as it identified with "specificity and particularity" financial records with Dr. Hewitt's name, the desired categories of financial records, and a date range. See MAG Ent., 375 N.J. Super. at 549-50. In Burke, we concluded the plaintiff's request "was confined to a specific subject matter that was clearly and reasonably described with sufficient identifying information, namely, EZ Pass benefits provided to Port Authority retirees," and should be disclosed under OPRA. 429 N.J. Super. at 176, 178. Akin to Burke, plaintiff sufficiently specified search terms — Dr. Hewitt's name, a date range, and a list of the specific type of financial records they desire, specifically, "contracts, bills, invoices, receipts, ledger accounts, purchase orders, payments, both sides of canceled checks which document payment of services provided by [Dr. Hewitt]" — that would

8

effectually facilitate defendants' search.  (Pa18).  See Burnett, 415 N.J. Super. at 515 (stating "[t]he word search is defined as 'to go or look through carefully in order to find something missing or lost.'  The word research, on the other hand, means a close and careful study to find new facts or information." (internal quotations omitted)).  And as plaintiff points out, the school district has the right to impose a special service charge for its staff to search for and obtain the records.  See N.J.S.A. 47:1A-5(c).  Accordingly, we reverse the trial court's order denying the plaintiff's request for Dr. Hewitt's financial records held by the district.

2. Communication Records

The trial court accepted defendants' representation that communications records sought by plaintiff do not exist because they were "undefined" and an "incomplete definition of communications, encompassing everything from text messages, emails, phone records, and social media posts, all regarding an unknown number of topics."  Considering the records sought covered a sixteen-year period, the court reasoned "the search for documents sought by [p]laintiffs would turn up thousands of potentially relevant records which would then need to be researched, compiled and laboriously reviewed by [Heiser] to produce a potentially responsive record, which is clearly unduly burdensome on the

[school district] and . . . Heiser." The court further found the request "overly broad" because Heiser would have "to subjectively determine what exactly [p]laintiffs sought in the case of any 'communications records/files.'"

"[T]o determine whether the citizen's interest in privacy outweighs the public's interest in governmental transparency," the court in this case considered the balancing test set forth in Burnett v. Cnty. of Bergen, 198 N.J. 408, 427 (2009). The court agreed with defendants that Dr. Hewitt's communications were not accessible as they "would likely contain highly sensitive information regarding student psychiatric records," creating a "very high" possibility of "nonconsensual disclosure." Lastly, the court determined access would infringe upon Dr. Hewitt's "constitutional right to privacy" under the Fourth Amendment, citing Riley v. California, 573 U.S. 373, 386 (2014).

As with the financial records, plaintiff argues the trial court erroneously found the communications records request was overly broad and not sufficiently specific. Plaintiff argues there was no burden in identifying the requested records by using the search term "Hewitt" in their email servers, and there is no indication in the record that they did so. Regarding the Burnett test, plaintiff maintains "[d]efendants provided no specific factual information that would support a privacy finding." And plaintiff claims there is no Fourth Amendment

violation because "working for the [school district] as a contractor or employee, his work is potentially a public record, subject to specific exemptions which must be supported by the factual record."

The trial court determined plaintiff's access to the school district's communications with Dr. Hewitt should be denied because it included confidential personally identifiable information (PII) not accessible under the Federal Family Educational Rights and Privacy Act of 1974 (FERPA), 20 U.S.C. § 1232g,[4] and the New Jersey Pupil Records Act (NJPRA), N.J.S.A. 18A:36-19, and their corresponding regulations.

---

[4] Under FERPA, PII includes:

> (a) The student's name; (b) The name of the student's parent or other family members; (c) The address of the student or student's family; (d) A personal identifier, such as the student's social security number, student number, or biometric record; (e) Other indirect identifiers, such the student's date of birth, place of birth, and mother's maiden name; (f) Other information that, alone or in combination, is linked or linkable to a specific student that would allow a reasonable person in the school community, who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty; or (g) Information requested by a person who the educational agency or institution reasonably believes knows the identity of the student to whom the education record relates.

FERPA is federal legislation providing education funding to states on the condition that there can be no release of education records and PII to unauthorized persons. 20 U.S.C. 1232g(b)(1). Though "FERPA does not itself establish procedures for disclosure of school records," it defines education records as "records, files, documents, and other materials which . . . contain information directly related to a student . . . [which] are maintained by an educational agency or institution or by a person acting for such agency or institution." K.L. v. Evesham Tp. Bd. of Educ., 423 N.J. Super. 337, 363 (App. Div. 2011) (quoting 20 U.S.C. § 1232g(a)(4)(A)).

In accordance with 34 C.F.R. § 99.31(b), "redacted education records to third parties without parental consent when all PII is removed [is permitted], [but] FERPA does not mandate such disclosure." C.E. v. Elizabeth Pub. Sch. Dist., 472 N.J. Super. 253, 265 (App. Div. 2022) (quoting L.R. I, 452 N.J. Super. at 85-86.) "An educational agency . . . that has received education records or information from education records . . . may release the records or information without . . . consent" and "may release de-identified student level data from

> [L.R. v. Camden City Pub. Sch. Dist. (L.R. I), 452 N.J. Super 56, 75 (2017), aff'd, 238 N.J. 547 (2019) (citing 34 C.F.R. § 99.3 (2017)).]

education records for the purpose of education research . . . ." 34 C.F.R. § 99.31(b)(1) and (2) (emphasis added). However, 20 U.S.C. § 1415(h)(4)(A), uses "shall" in requiring the disclosure of de-identified records. C.E. 472 N.J. Super at 266.

Under NJPRA, student records "retain[] [their] protected status under New Jersey law notwithstanding the school district's redaction from that record of '[PII]' . . . ." L.R. v. Camden City Pub. Sch. Dist. (L.R. II), 238 N.J. 547, 550 (2019) (Patterson, J., concurring). Further, "N.J.A.C. 6A:32-2.1 includes in the definition of a 'student record' a document containing information relating to an individual student, even if that document has been stripped of [PII] that might identify the student in compliance with federal law." C.E. 472 N.J. Super. at 264 (alterations in original) (quoting L.R. II, 238 N.J. at 548).

For a court to order access to student records under N.J.A.C. 6A:32-7.5E "where '[o]rganizations, agencies, or persons . . . not otherwise specified in the regulations can only obtain access to student records' subject to written parental consent or a court order," the requester must demonstrate there is "1) an interest in the public record and 2) that their interest outweighs the State's non-disclosure interest." Id. at 266 (quoting L.R. I, 452 N.J. Super at 89). A court must perform

a balancing test, considering the following non-exclusive ten factors under N.J.A.C. 6A32-7.5(e)(15):

> (1) the type of student record requested; (2) the information that the student record contains; (3) the potential for harm in any subsequent nonconsensual disclosure of the student record; (4) the injury from disclosure to the relationship between the educational agency and the student and his or her parents or guardians; (5) the extent to which disclosure will impede the educational agency's functions by discouraging candid disclosure of information regarding students; (6) the effect disclosure may have upon persons who have provided such information; (7) the extent to which agency self-evaluation, program improvement, or other determinations will be chilled by disclosure; (8) the adequacy of safeguards to prevent unauthorized disclosure; (9) the degree of need for access to the student records; and (10) whether there is an express statutory or regulatory mandate, articulated public policy, or other recognized public interest militating toward access.
>
> [L.R. II, 238 N.J. at 575.]

The trial court here did not consider the non-exclusive ten-factor test. It instead considered the less-extensive seven-factor test set forth in the Court's earlier decision in? Burnett.  Moreover, given the court did not review in camera any of Dr. Hewitt's communications with the school district, there is no support in the record for the court's determination that "the potential for harm in the case of nonconsensual disclosure is very high."  Considering the communications

14

sought are with the school district—not its counsel—and are related to a contractual relationship, we see no violation of the doctor's Fourth Amendment rights. Riley, the United States Supreme Court case cited by the trial court, concerned the criminal defendants' Fourth Amendment privacy interest arising from a warrantless search of their cell phones incident to an arrest. 573 U.S. at 386. We discern no applicability of the principles pronounced in Riley with the communications records sought here.

Accordingly, to the extent that the school district has access to the requested communication records with Dr. Hewitt, we reverse and remand to the trial court to conduct an in-camera review of the requested communication records with Dr. Hewitt and determine, under the L.R.II test, if any of the records are accessible. We leave it to the trial court to determine if a Special Adjudicator is appropriate to assist the court in resolving this dispute. See Rule 4:41-1.

3. Personnel information/records

The trial court denied plaintiff's request that under County of Gloucester and C.E. plaintiff was entitled to Dr. Hewitt's records—experiential, educational, or medical qualifications including resumes, professional licenses, and certifications—involving the school district's litigation. The court found plaintiff's reliance on those cases was "misplaced" because they involved

requests for settlement agreements "which are exponentially less sensitive than the psychiatric records of students which are protected by both federal and state statute." Plaintiff cites no legal basis for accessing this information under County of Gloucester or C.E. Thus, we affirm the court's ruling.

4. Dr. Hewitt's Submissions in Legal Proceedings

Based on FERPA and NJPRA, the trial court denied plaintiff's request for Dr. Hewitt's submissions in three OAL matters, wherein he served as an expert for the school district. Applying FERPA, the court determined the "disclosure of the confidential psychiatric reports of students" would reasonably result in identifying the students in the litigation and that is not authorized under the statute. Applying NJPRA, the court determined greater protections were afforded to student records than FERPA even where PII is redacted. The court also relied upon County of Gloucester and C.E. in reasoning the OAL submissions were not accessible because they contained confidential student information.

Plaintiff contends Dr. Hewitt's records in the three OAL matters were accessible under N.J.A.C. 6A:32-7.5(g)(1), amended after the case law relied upon by the trial court, without the consent of the student, guardian, or parent, if "all [PII]" was redacted. In the alternative, plaintiff asserts the records were

16

accessible without redactions because, once filed with the OAL, they are public records under <u>C.E.</u>, 472 N.J. Super. at 267.

N.J.A.C. 6A:32-7.5(g)1, which became effective July 5, 2022, provides:

> In complying with this section, <u>district boards of education</u> and charter school and renaissance school project boards of trustees <u>shall adhere to the requirements pursuant to [OPRA and FERPA]</u>.
>
> > 1. When responding to OPRA requests from any party, including parties other than those listed at (e)[5] above, a <u>district board of education</u> or charter school or renaissance school project board of trustees <u>may release, without consent, records removed of all [PII], as such documents do not meet the definition of a student record</u>. <u>Before making any release, the district board of education</u> or charter school or renaissance school project board of trustees <u>shall have made a reasonable decision that a student's identity cannot be determined</u> whether through single or multiple releases, or when added to other reasonably available information.
>
> [(Emphasis added).]

We agree with defendants that N.J.A.C. 6A:32-7.5(g)(1) is subject to OPRA and FERPA. However, the requirement of confidentiality diminishes

---

[5] N.J.A.C. 6A:32-7.5(e) enumerates the "[o]rganizations, agencies, and persons authorized to access student records," which does not include plaintiff.

where the sought-after documents constitute "legal submissions," as "[t]here is . . . a 'presumption' of public access to documents filed with the court in connection with civil litigation." C.E., 472 N.J. Super at 267 (alterations in original) (quoting Est. of Frankl v. Goodyear Tire & Rubber Co., 373 N.J. Super. 509, 511 (App. Div. 2003)). In C.E., this court affirmed the trial court's order requiring the defendant school board to release OAL settlement documents in student special education disputes—without a protective order—subject to redactions of PII. Ibid. As the Court recognized some twenty-five years prior to C.E. under OPRA's predecessor statute, the Right to Know Law, the claim of confidentiality does not hold water when a document is submitted to a court. See Keddie v. Rutgers, 148 N.J. 36, 51 (1997). The late Justice Coleman, writing for the Court, reasoned, "common-law right of access attaches to unsealed records and documents filed with courts and agencies in connection with nondiscovery applications that are relevant to the disposition of the matter." Ibid. (citing Hammock v. Hoffmann-LaRoche, Inc., 142 N.J. 356, 375-82 (1995)). There are no provisions in OPRA or FERPA that close the door to private student records once it is pried open in court proceedings not under seal. As evidenced by the reported three OAL proceedings, the student and parent names were redacted. Thus, in reversing the trial court, we conclude Dr.

Hewitt's submissions in the proceedings should be released to plaintiff after the PII is redacted.

IV.

Request Two

The trial court denied plaintiff's request for defendants' search records for Request One. Relying on the holding in Educ. L. Ctr. v. N.J. Dep't of Educ., 198 N.J. 274, 295 (2009), that deliberative material "relate[s] to the formulation or exercise of . . . policy-oriented judgment," the court determined the search records were exempt from disclosure as deliberative materials. The court found the records were deliberative because "[b]efore [d]efendants could formally object to [p]laintiff['s] request, a preliminary search was undertaken to determine whether the request could be complied with," making "the searches . . . sought . . . pre-decisional."

Government records under OPRA "shall not include inter-agency or intra-agency advisory, consultative, or deliberative material." N.J.S.A. 47:1A-1.1. "The deliberative process privilege 'permits the government to withhold documents that reflect advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" Bozzi v. City of Atlantic City, 434 N.J. Super. 326, 338 (App.

Div. 2014) (quoting Educ. L. Ctr., 198 N.J. at 285). The public body has the initial burden "to show that the documents it seeks to shield are pre-decisional and deliberative in nature and contain opinions, recommendations, or advice about governmental policies." Ibid. (citing In re Liquidation of Integrity Ins. Co., 165 N.J. 75, 88 (2000)).

Defendants have not satisfied these requirements. They contend "[b]efore [they] could formally object to [p]laintiff['s] request, a preliminary search was undertaken to determine whether the request could be complied with" which makes them "pre-decisional, deliberative material." While we agree there had to be inter-school district communications to determine if the records sought in Request One existed, we do not agree that the communications were deliberative. Plaintiff is not entitled to communications regarding whether the records should be disclosed under OPRA. This is clearly deliberative and not subject to disclosure. But plaintiff is entitled to review communications discussing how the search for the records was conducted. Plaintiff correctly asserts defendants' communications "about how [they] should respond to . . . [Request One]" did not involve "policy-level decisions" because the information sought regards "the clerical function of responding to [Request One], which is an administrative task, not policy making." Accordingly, we reverse the trial

court's order barring the disclosure of defendants' administrative communications regarding a search for Request One.

V.

In conclusion, we affirm the trial court's order that, under <u>County of Gloucester</u> and <u>C.E.</u>, defendant is not entitled to Dr. Hewitt's records involving the school district's litigation.  We reverse the trial court's orders denying plaintiff's request for:  Dr. Hewitt's financial records; Dr. Hewitt's trial submissions in the noted three OAL proceedings with redaction of PII; and defendants' administrative communications records regarding the Request One search.  In addition, we reverse the trial court's order barring the school district's communication records with Dr. Hewitt and remand to the trial court to conduct an in-camera review of the requested communication records with Dr. Hewitt and determine under the <u>L.R.II</u> balancing test if any of the records are accessible.

Affirmed in part and reversed and remanded in part for proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION